602 P.2d 1021

**MUNDY & MUNDY, INC., a New Mexico Corporation, Plaintiff-Appellant,**

v.

**Ranger ADAMS and Theresa Adams, his wife, Defendants-Appellees.**

Isaac Velasquez, Sylvia Velasquez, his wife, Adela V. Polaco and Elfigo Polaco, her husband, Frutoso Velasquez, Eddy Velasquez, Frances F. Trujillo, Soraida V. Cordova and Joe B. Cordova, Intervenors-Appellees.

**No. 12333.**

Supreme Court of New Mexico.

Nov. 5, 1979.

Rehearing Denied Nov. 26, 1979.

Gerber & Ives, Paul D. Gerber, Santa Fe, for appellant.

Arthur H. Coleman, P. C., Albuquerque, for appellees.

## OPINION

WALTERS, Judge.

Mundy & Mundy, Inc. (hereinafter "Mundy") brought an unlawful detainer suit against defendants Adamses for possession of a 109.6 acre tract of land within the Tierra Amarilla Land Grant known as the "Payne Parcel." Mrs. Adams and the In-tervenors in this suit are survivors and heirs of Enetro and Delfinia Velasquez. Enetro was a party litigant to a 1957 federal court suit concerned with the ownership of the Payne Parcel. Adams and the Intervenors (hereafter "Velasquez heirs") counter-claimed below, alleging ownership of the "Hicks Survey Parcel," which was larger than and included the Payne Parcel. Adopting the Velasquez heirs' proposed findings and conclusions verbatim (*see Mora v. Martinez*, 80 N.M. 88, 451 P.2d 992 (1969)), the trial court found in favor of the Velasquez heirs and dismissed Mundy's complaint. Mundy appeals.

The chronology of developments in this case may lead to a better understanding of the various contentions raised by the parties below:

In 1928 Enetro and his wife Delfinia moved onto the Payne Parcel, constructing a home and other buildings and using the land for ranching purposes. They or their heirs paid taxes on the land from 1928 through the time of this trial in 1978.

In 1946 Enetro received and recorded a "documento" purporting to convey 160 acres to him from the Tierra Amarilla Land Grant, Corporacion de Abiquiu. That land was described as being bordered on the east, south and west by Grant lands and on the north by the Brazos River.

In 1957 the Payne Land & Livestock Company, Mundy's predecessor, filed suit in the United States District Court against Enetro Velasquez for possession of the Payne Parcel, requesting that title be quiet-ed in Payne. A judgment was entered in that suit approving and confirming a stipu-lation entered into by the parties, ordering that the rights and obligations of the Payne Company and Enetro be "fixed and estab-lished by the terms and provisions of said Stipulation." Included in the stipulation was the agreement that "defendant Velas-quez and his wife shall have a life estate for their joint lives," in and to the land known here as the Payne Parcel. The stipulation further provided for payment of taxes by Enetro while he occupied the property, for upkeep of fences and improvements to the

land, and "that upon the termination of the estate herein granted him and his wife that said improvements shall be and become the property of plaintiff [Payne Land & Livestock Company] without further consideration." · The approved stipulation, which became a part of the judgment, also contained the following paragraph:

It is further stipulated that the defendant and his wife, if she be the survivor of them, shall promptly pay all water assessments and all other water charges necessary to keep in good standing any and all water rights now pertinent to this land, or which may hereafter become pertinent to this land, and that said right shall be transferred to the plaintiff, its successors and assigns, at the same time possession of the real estate is so delivered.

The paragraph granting a life estate to Enetro and his wife carried a limitation:

. . . provided, however, that if they or their survivors move off of the land during their lifetime then the life estate shall terminate and full title and possession immediately be vested in the plaintiff or its assigns or successors.

A supplemental judgment determined the tract of land in dispute in 1957 to be as surveyed by one G. H. Denton, containing "approximately 109.6 acres." The parties to this appeal agree that the property referred to in the federal suit is the same property sued for here and described as the Payne Parcel. The 1957 judgment and supplemental judgment were recorded in Rio Arriba county in 1960 and again in 1976.

Between the date of the Denton survey in 1957 and the Hicks survey in 1976, the Brazos River, as the northern boundary of the Payne Parcel, had moved north approximately 1,000 feet in the northwest and north central portion of the tract, thus accounting for the difference of approximately 90 acres between the sizes of the Payne Parcel and the Hicks Survey Parcel.

In 1962 Enetro and his wife deeded the property described in the "documento" (the Payne Parcel) to their sons Frutoso and Isaac Velasquez, but the parents continued to reside on the premises. Enetro died in

1974, and Delfinia died the following year. At the time of suit, Isaac's daughter and her husband, the Adamses, were living on the land.

The trial court found that the Velasquez heirs were the owners in fee simple of the 201.578 acres described in the Hicks Survey Parcel, as heirs of Delfinia as well as by reason of adverse possession. It found, also, that Enetro's and Delfinia's ownership, presumably by adverse possession, was held as community property; that the federal court judgment was void "particularly as to Delfinia Velasquez because of the failure to join Delfinia Velasquez as a party therein"; that Delfinia succeeded to Enetro's and the community's interest and title upon Enetro's death; that even if Enetro had acquired his interest as his sole and separate property by reason of the "documento," his interest was commingled and transmuted and became community property and that he and Delfinia had held it openly and adversely for more than ten years from the date of recording the documento until the federal suit was filed; that if the title was not perfected in Enetro and Delfinia, Isaac perfected it by adverse possession between the date of the deed from his parents in 1962 and the recording of the 1957 judgment in 1976.

Upon those findings the trial court made parallel conclusions, holding the 1957 federal court judgment void, and concluding that any interest of Enetro's was community property by intent, transmutation, commingling "and otherwise"; and that the Velasquez heirs were the owners in fee simply by inheritance from Delfinia as well as through clear and convincing evidence of their holding through adverse possession. One of its conclusions was that "[p]laintiff is not lawfully entitled to possession of the property or any of the same, nor was it so entitled at any time material hereto."

In our view, the judgment below can be sustained only if the trial court correctly determined the nullity of the 1957 judgment, because there is no evidence that will support a finding or conclusion that any of Enetro's and Delfinia's heirs were in posses-

sion of the property for a ten-year period after the 1962 deed to Frutoso and Isaac so as to meet one of the essential elements of adverse possession by the heirs, or any of them.

It is plain from the findings and conclusions made that the factor most influencing the trial court's declaration that the 1957 judgment was void was the plaintiff's failure, in the 1957 suit, to join Delfinia as a defendant. We disagree with the trial court's assessment of that judgment, and the ramifications flowing from its conclusion of nullity, for a number of reasons:

1. If Delfinia was an indispensable party to the 1957 lawsuit, she would have been so only because she and her husband had established a community property title by adverse possession prior to that time. Section 37–1–22, N.M.S.A.1978 [then § 23–1–22, N.M.S.A.1953], requires proof of three essential elements to satisfy a claim of title by adverse possession:

(a) the claim must be made "in good faith under color of title";

(b) claimant must show that, for ten years, possession was "actual and visual appropriation of land, commenced and continued under a color of title and claim of right inconsistent with and hostile to the claim of another"; and

(c) claimant, his predecessors or grantors, must have continuously paid all taxes assessed against the property during the ten-year period.

The only "color of title" instrument in existence in 1957 was that 1946 documento from the Tierra Amarilla Land Grant to Enetro. Insofar as the public records indicated, in 1957, the documento conveyed title to Enetro only. Enetro's answer to the 1957 complaint, received in evidence below and admitted to be true under N.M.R.Civ.P. 36, N.M.S.A.1978, did not raise the defense of failure to join an indispensable party. Enetro's affirmative defenses and counterclaim in that suit alleged only that the *defendant* (Enetro Velasquez) was the owner in fee simple by reason of *his* adverse possession of the premises after receipt of the 1946 documento. His answer establish-

es his denial of community property by transmutation, commingling, "or otherwise," as of 1957.

The 1957 judgment, also a part of the evidence in this suit, recited that presentation of evidence had been concluded when the parties "reached a compromise and settlement of the issues involved" and, upon the stipulation of the parties, the court received and approved it and ordered its provisions to be carried into effect. The "issues involved" in that suit were the claims by Payne Land & Livestock Company to fee simple ownership of the land and right to possession, and Enetro's defense and counterclaim of ownership by reason of adverse possession. Thus it is beyond dispute that, in 1957, Enetro *abandoned* and *compromised* his adverse possession contention, and accepted instead a life estate in the premises for himself and his wife.

■ The Velasquez heirs were allowed, in 1978, to do what Enetro failed to do in 1957—that is, they were permitted to interpose the affirmative defense of failure to join an indispensable party to the Payne complaint twenty years after the defendant in that case, Enetro, failed to do so. Rule 12 of the Rules of Civil Procedure clearly contemplates that all affirmative defenses be raised either in the responsive pleading to a complaint or by separate motion, and be decided prior to entry of judgment. The *only* defense which is not waived by failure to assert it prior to judgment is lack of subject matter jurisdiction, and that defense may even be raised for the first time on appeal. *Chavez v. County of Valencia*, 86 N.M. 205, 521 P.2d 1154 (1974); *Kalosha v. Novick*, 84 N.M. 502, 505 P.2d 845 (1973).

■ The issue of adverse possession in Enetro (or in Enetro and Delfinia) having been voluntarily relinquished by Enetro in 1957, and the claim of Delfinia's interest never having been raised, it does not matter whether any interest of Enetro's was commingled or transmuted prior to 1957. All such interesting theories were waived by the compromise which became a part of the 1957 judgment. That judgment "fixed" the

rights of Enetro *and Delfinia* to a life estate as set forth in the stipulation. The effect of the judgment was to settle with finality, in 1957, Enetro's claim of adverse possession in himself alone and, because it was not raised and therefore waived, it also foreclosed any claim by Enetro or his heirs that Delfinia had either a personal or community interest to assert as an adverse possessor. A right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction cannot be disputed in a subsequent suit between the same parties or their privies, *First National Bank of Albuquerque v. Tome,* 23 N.M. 255, 167 P. 733 (1917), and in the absence of identity of causes of action, as in this case, a judgment on those ultimate issues litigated and necessarily determined in the prior action is an absolute bar to relitigation in a later suit. *City of Santa Fe v. Velarde,* 90 N.M. 444, 564 P.2d 1326 (1977). Enetro's adverse possession claim was put at issue and disposed of in 1957.

■ 2. If the trial court reasoned that adverse possession in Delfinia was not decided in the federal suit, and that Enetro could not compromise *her* community property rights in real property, and thus *her* heirs were not barred from raising her title by adverse possession prior to 1957, we must reject that explanation also. There was no evidence whatever that Delfinia ever had "color of title" upon which to initiate a claim of adverse possession in herself, either as a sole possessor or as a possessor in community property. Moreover, the abandonment by Enetro of his claim of adverse possession destroys the basis upon which she could have claimed a community interest as an adverse possessor, since her community interest by transmutation, commingling or "otherwise" must necessarily depend upon such an interest first being found in her husband. The federal court judgment extinguished any such claim in Enetro, and that is an ultimate issue which could not be relitigated in this suit, but is collaterally binding in a subsequent suit between the same parties or their privies. *Torres v. Village of Capitan,* 92 N.M. 64, 582 P.2d 1277 (1978). There is no question that all parties here are privies of the litigants in the 1957 lawsuit.

■ 3. Finally, appellees urge that the language of the stipulation is ambiguous regarding the estate granted to Enetro and Delfinia, because it did not unequivocally declare that Payne Company held the reversionary fee simple estate upon termination of the life estates created by the stipulation. Reading the stipulation as a whole and relying on the entirety of it rather than a single phrase to which we are referred by appellees, we hold that the stipulation sufficiently created a life estate in "defendant Velasquez and his wife . . *for their joint lives."* It is true that the 1957 judgment did not unequivocally quiet title in the Payne Company, Mundy's grantee. But it is indisputable that the Velasquez interest was limited to a life estate, and a life estate terminates upon the death of the person's or persons' lives by which the estate is measured. *Moynihan, Survey of the Law of Real Property,* 24, 28 (1940 ed.) It is equally clear that the stipulation identified the Payne Company as, at least, a vested remainderman. Payne Company and Enetro agreed that Enetro and Delfinia should have "a life estate for their joint lives." Under the definition of a life estate, it follows that the estate would terminate when the last of the "joint lives" terminated.

Appellees point to another proviso, however, which permitted termination at an earlier date "if *they* or *their survivors* move off the land during *their lifetime,"* when "*full title* and possession" would then "*be vested in the plaintiff* or its assigns or successors." They would ignore other language in other paragraphs which refers to improvements becoming the *property of plaintiff* "upon the termination of the estate *granted him and his wife*"; water rights to be transferred to the plaintiff "at the same time possession of the real estate" was delivered by "defendant and his wife, if she be the survivor *of them,"* and similar obligations of "defendant or his *surviving wife,* if she should be *the survivor."* We

acknowledge that grammatical agreement between the pronouns "they" and "their survivors" and their antecedents, "defendant and his wife," is syntactically incorrect. Nevertheless, we are persuaded by the entirety of the stipulation that nothing more was intended by the settlement document than to grant a life estate to Enetro and Delfinia; that all references to survivor or survivors were intended to mean the spouse who survived the other; and that the use of the plural pronoun referred back only to Enetro and Delfinia and not to other survivors. Any other construction would destroy the meaning of "life estate" and make the provisions for termination of the life estate and vesting of possession in the plaintiff meaningless.

 We are obliged not only to enforce a former judgment bearing upon the issues raised in a subsequent lawsuit, but we are required, in doing so, to determine the intention and meaning of the judgment and resort to the pleadings and other documents of record, if necessary, to ascertain the nature of the rights asserted and the significance of the judgment entered. *Hollingsworth v. Hicks,* 57 N.M. 336, 258 P.2d 724 (1953). In the 1957 suit, both plaintiff and defendant asserted ownership in fee simple, one by reason of purchase and the other through adverse possession. By the judgment, defendant and his wife received a life estate for the term of their joint lives and plaintiff was to have the real estate, water rights and improvements appurtenant to the land upon termination of that estate. We construe the contract of stipulation, which is a part of the judgment, to effectuate the intention of the parties, and, in so doing, we will give meaning and significance to each part in its proper context with all other parts. *Schultz & Lindsay Const. Co. v. State,* 83 N.M. 534, 494 P.2d 612 (1972). Using this rule as a guideline, we do not hesitate to hold that the 1957 judgment quieted fee simple title to the property in the Payne Company; the judgment also granted to the ancestors of the Velasquez heirs a life estate therein; and that the life estate was terminated by the death of Delfinia in 1975.

As Mundy proved its right to possession by admission of appellees that it was Payne's successor, it was entitled to judgment below. In view of our holding, the other points raised on appeal do not require discussion.

The judgment entered in this case is reversed, and the matter is remanded to the district court with direction to enter judgment in plaintiff's favor.

IT IS SO ORDERED.

EASLEY and PAYNE, JJ., concur.