427 So.2d 798 (1983)
Richard NELL, Appellant,
v.
INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL # 675, and Fidelity and Deposit Company of Maryland, Appellees.
No. 81-386.
District Court of Appeal of Florida, Fourth District.
March 9, 1983.
Dale Ross and Sheldon C. Kurland of Kurland & Ross, P.A., Fort Lauderdale, for appellant.
James O. Murphy, Jr., and Randolph Braccialarghe of English, McCaughan & O'Bryan, Fort Lauderdale for appellee, Fidelity & Deposit Co. of Maryland.
*799 GLICKSTEIN, Judge.
Richard Nell, as president and business manager of International Union of Operating Engineers, Local # 675 (IUOE), was covered by a labor organization security bond underwritten by Fidelity and Deposit Company of Maryland. He admitted, in the proceedings below, that he had been indicted by a federal grand jury, found guilty of the offenses charged in counts one through eleven of the indictment, and adjudged guilty and sentenced to a term of imprisonment. The indictment charged Nell willfully and unlawfully embezzled, stole, abstracted and converted to his own use and the use of others, monies, funds and assets of IUOE by causing IUOE to expend funds, monies, or assets for a $6,000.00 European vacation for himself and others, personal legal fees and expenses in the amount of $9,000.00, a $3,650.00 Cadillac in his name, $100.00 per month and $65.00 per week automobile allowance and travel expenses, respectively, while he concurrently was reimbursed for same, and $400.00 worth of fraudulent gasoline receipt claims.
IUOE's complaint against Fidelity charged Nell's activities resulted in his failure to faithfully discharge his duties in handling the Local's funds, thus requiring Fidelity to cover IUOE's losses. Fidelity filed a third party complaint for indemnity against Nell in the event it was held liable under the terms of the bond. It then partly successfully moved for partial summary judgment to limit its liability to IUOE and later paid IUOE $14,000.00 as full and final settlement of its claim. Subsequently, Fidelity moved for partial summary final judgment against Nell. The trial court granted the motion, entered a congruent judgment upon the issue of liability in favor of Fidelity, and denied Nell's motion for rehearing. This appeal followed.
We have considered the points raised by Nell and conclude one has merit; namely, that the trial court erred in applying the principle of collateral estoppel or estoppel by judgment in awarding partial summary final judgment. In order to have found as it did, the trial court must have concluded, as alleged in Fidelity's reply to Nell's affirmative defenses, that Nell was estopped from asserting knowledge, ratification and approval by the union membership of the acts attributed to Nell in the main complaint because of his conviction.
Could or should this action have been brought against Nell in federal court, the rule in Emich Motors Corp. v. General Motors Corp., 340 U.S. 558, 71 S.Ct. 408, 95 L.Ed. 534 (1951), apparently would have governed. There the Supreme Court of the United States held:
It is well established that a prior criminal conviction may work an estoppel ... in a subsequent civil proceeding... . Such estoppel extends only to questions "distinctly put in issue and directly determined" in the criminal prosecution... . In the case of a criminal conviction based on a jury verdict of guilty, issues which were essential to the verdict must be regarded as having been determined by the judgment.
Id. at 568-69, 71 S.Ct. at 413-14 (citations omitted). See also Wolfson v. Baker, 623 F.2d 1074 (5th Cir.1980), cert. denied, 450 U.S. 966, 101 S.Ct. 1483, 67 L.Ed.2d 615 (1981); United States v. Frank, 494 F.2d 145 (2d Cir.), cert. denied, 419 U.S. 828, 95 S.Ct. 48, 42 L.Ed.2d 52 (1974); and Cardillo v. Zyla, 486 F.2d 473 (1st Cir.1973).
The action was brought, however, in the courts of this state; and the Supreme Court of Florida has held repeatedly, at least in civil actions, that collateral estoppel, or estoppel by judgment, requires identity of parties in both actions. Mobil Oil Corp. v. Shevin, 354 So.2d 372 (Fla. 1977);[1]Seaboard Coast Line Railroad v. Cox, 338 So.2d 190 *800 (Fla. 1976); Gordon v. Gordon, 59 So.2d 40 (Fla.), cert. denied, 344 U.S. 878, 73 S.Ct. 165, 97 L.Ed. 680 (1952). Therefore, when as in this case one of the proceedings is criminal and the other civil, the supreme court would appear to be even less prone to permit the application of collateral estoppel. This is illustrated best by the fact that in a civil action, though evidence of a prior guilty plea in a criminal proceeding is permitted as an admission against interest,[2] the supreme court has refused to allow introduction of a prior criminal conviction judgment which was not based on a plea of guilty.[3] We have to believe the supreme court, unlike the federal courts, similarly would hold issues common to civil and criminal proceedings, directly determined in the prior criminal proceeding, would have to be tried anew in the civil action.[4] Accordingly, we reverse and remand.
HURLEY and DELL, JJ., concur.
NOTES
[1] The supreme court held:

Collateral estoppel, or estoppel by judgment, is a judicial doctrine which in general terms prevents identical parties from relitigating issues that have previously been decided between them. The essential elements of the doctrine are that the parties and issues be identical, and that the particular matter be fully litigated and determined in a contest which results in a final decision of a court of competent jurisdiction.
354 So.2d at 374 (footnotes omitted).
[2] Boshnack v. World Wide Rent-A-Car, Inc., 195 So.2d 216 (Fla. 1967). See also the decision of this court in Hatfield v. York, 354 So.2d 426, 427 (Fla. 4th DCA 1978), which noted that the guilty plea "does not as a matter of law establish the truth of the facts upon which the judgment of guilt was rendered."
[3] Eggers v. Phillips Hardware Co., 88 So.2d 507 (Fla. 1956) (en banc); Moseley v. Ewing, 79 So.2d 776 (Fla. 1955). Stevens v. Duke, 42 So.2d 361 (Fla. 1949). The Florida view appears to be the general rule. Annot., 18 A.L.R.2d 1287 (1951) (at least thirty other states are cited for the principle that a judgment of conviction is not admissible in a civil action as evidence of the facts upon which it is based); 46 Am.Jur.2d Judgments § 615 (1969).

Various reasons have been assigned for the rule that the record of a judgment rendered in a criminal case may not be received in evidence in a subsequent civil action to bar such action, or to establish the truth of the facts upon which it was rendered. As a foundation for the rule, it has been suggested that there is a dissimilarity in objects, issues, results, procedures, and parties in the two actions, as well as a lack of privity and mutuality. Moreover, it is frequently pointed out that different rules of evidence apply, not only as to the elements of proof, degree of proof, and weight of the evidence, but also as to the competency of witnesses.
Id. § 617, at 774 (footnotes omitted). Another reason which has been suggested is that in a criminal proceeding a defendant may elect not to take the stand whereas he might not hesitate to do so in a subsequent civil action.
The majority view differs from that recognized in the federal courts, some of whose decisions have been cited previously herein.
[4] Federal courts have been proceeding down two parallel roads that lead away from the Florida rule which requires identity of parties in order to apply collateral estoppel or estoppel by judgment. On the first road, originating with Emich, the use of collateral estoppel in a civil action is allowed when questions of law or fact therein were directly determined in a previous criminal proceeding involving the same defendant. The decision in Emich, penned by Justice Clark, was based in great measure upon language in Frank v. Mangum, 237 U.S. 309, 334, 35 S.Ct. 582, 589, 59 L.Ed. 969 (1914), but Justice Clark's opinion neglected to note that Mangum expressly directed itself to application of the principle in disputes between the same parties. Nevertheless, Emich has been cited with approval in Kennedy v. Mendoza-Martinez, 372 U.S. 144, 157, 83 S.Ct. 554, 561, 9 L.Ed.2d 644 (1963), and Hanover Shoe, Inc. v. United Shoe Mach. Corp., 392 U.S. 481, 485, 88 S.Ct. 2224, 2227, 20 L.Ed.2d 1231 (1968), and now apparently is engrained deeply throughout the federal system, notwithstanding the absence of any real analysis in the opinion itself or explanation in subsequent opinions.

On the second road the use of collateral estoppel is allowed when issues involved in a civil action have been determined directly in a previous civil action. This exact situation is not involved in this case but is mentioned because, in following Emich, federal courts often wind up merging the two roads in their analyses. Justice Stewart's opinion in Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326-31, 99 S.Ct. 645, 649-51, 58 L.Ed.2d 552 (1979), gives us an overall picture:
Collateral estoppel, like the related doctrine of res judicata, has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation. Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, 402 U.S. 313, 328-329, 91 S.Ct. 1434, 1442-1443, 28 L.Ed.2d 788. Until relatively recently, however, the scope of collateral estoppel was limited by the doctrine of mutuality of parties. Under this mutuality doctrine, neither party could use a prior judgment as an estoppel against the other unless both parties were bound by the judgment. Based on the premise that it is somehow unfair to allow a party to use a prior judgment when he himself would not be so bound, the mutuality requirement provided a party who had litigated and lost in a previous action an opportunity to relitigate identical issues with new parties.
By failing to recognize the obvious difference in position between a party who has never litigated an issue and one who has fully litigated and lost, the mutuality requirement was criticized almost from its inception. Recognizing the validity of this criticism, the Court in Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, supra, abandoned the mutuality requirement, at least in cases where a patentee seeks to relitigate the validity of a patent after a federal court in a previous lawsuit has already declared it invalid. The "broader question" before the Court, however, was "whether it is any longer tenable to afford a litigant more than one full and fair opportunity for judicial resolution of the same issue." 402 U.S., at 328, 91 S.Ct., at 1442. The Court strongly suggested a negative answer to that question: "In any lawsuit where a defendant, because of the mutuality principle, is forced to present a complete defense on the merits to a claim which the plaintiff has fully litigated and lost in a prior action, there is an arguable misallocation of resources. To the extent the defendant in the second suit may not win by asserting, without contradiction, that the plaintiff had fully and fairly, but unsuccessfully, litigated the same claim in the prior suit, the defendant's time and money are diverted from alternative uses  productive or otherwise  to relitigation of a decided issue. And, still assuming that the issue was resolved correctly in the first suit, there is reason to be concerned about the plaintiff's allocation of resources. Permitting repeated litigation of the same issue as long as the supply of unrelated defendants holds out reflects either the aura of the gaming table or `a lack of discipline and of disinterestedness on the part of the lower courts, hardly a worthy or wise basis for fashioning rules of procedure.' Kerotest Mfg. Co. v. C-O-Two Co., 342 U.S. 180, 185, 72 S.Ct. 219, 222, 96 L.Ed. 200 (1952). Although neither judges, the parties, nor the adversary system performs perfectly in all cases, the requirement of determining whether the party against whom an estoppel is asserted had a full and fair opportunity to litigate is a most significant safeguard." Id., at 329, 91 S.Ct., at 1443.
The Blonder-Tongue case involved defensive use of collateral estoppel  a plaintiff was estopped from asserting a claim that the plaintiff had previously litigated and lost against another defendant. The present case, by contrast, involves offensive use of collateral estoppel  a plaintiff is seeking to estop a defendant from relitigating the issues which the defendant previously litigated and lost against another plaintiff. In both the offensive and defensive use situations, the party against whom estoppel is asserted has litigated and lost in an earlier action. Nevertheless, several reasons have been advanced why the two situations should be treated differently.
First, offensive use of collateral estoppel does not promote judicial economy in the same manner as defensive use does. Defensive use of collateral estoppel precludes a plaintiff from relitigating identical issues by merely "switching adversaries." Bernhard v. Bank of America Nat. Trust & Savings Assn., 19 Cal.2d 807 at 813, 122 P.2d 892 at 895. Thus defensive collateral estoppel gives a plaintiff a strong incentive to join all potential defendants in the first action if possible. Offensive use of collateral estoppel, on the other hand, creates precisely the opposite incentive. Since a plaintiff will be able to rely on a previous judgment against a defendant but will not be bound by that judgment if the defendant wins, the plaintiff has every incentive to adopt a "wait and see" attitude, in the hope that the first action by another plaintiff will result in a favorable judgment. E.g., Nevarov v. Caldwell, 161 Cal. App.2d 762, 767-768, 327 P.2d 111, 115; Reardon v. Allen, 88 N.J. Super. 560, 571-572, 213 A.2d 26, 32. Thus offensive use of collateral estoppel will likely increase rather than decrease the total amount of litigation, since potential plaintiffs will have everything to gain and nothing to lose by not intervening in the first action.
A second argument against offensive use of collateral estoppel is that it may be unfair to a defendant. If a defendant in the first action is sued for small or nominal damages, he may have little incentive to defend vigorously, particularly if future suits are not foreseeable. The Evergreens v. Nunan, 141 F.2d 927, 929 (CA2); cf. Berner v. British Commonwealth Pac. Airlines, 346 F.2d 532 (CA2) (application of offensive collateral estoppel denied where defendant did not appeal an adverse judgment awarding damages of $35,000 and defendant was later sued for over $7 million). Allowing offensive collateral estoppel may also be unfair to a defendant if the judgment relied upon as a basis for the estoppel is itself inconsistent with one or more previous judgments in favor of the defendant. Still another situation where it might be unfair to apply offensive estoppel is where the second action affords the defendant procedural opportunities unavailable in the first action that could readily cause a different result.
We have concluded that the preferable approach for dealing with these problems in the federal courts is not to preclude the use of offensive collateral estoppel, but to grant trial courts broad discretion to determine when it should be applied. The general rule should be that in cases where a plaintiff could easily have joined in the earlier action or where, either for the reasons discussed above or for other reasons, the application of offensive estoppel would be unfair to a defendant, a trial judge should not allow the use of offensive collateral estoppel.
(Footnotes omitted.)