696 P.2d 484

Helen V. EDWARDS, Fiduciary Trustee
of James E. Edwards Family Trust,
Plaintiff-Appellant,

v.

FIRST FEDERAL SAVINGS & LOAN
ASSOCIATION OF CLOVIS, Defend-
ant and Third-Party Plaintiff-Appellee,

v.

James E. EDWARDS and Helen V. Ed-
wards, Husband and Wife,
Third-Party Defendants-Appellants.

No. 7854.

Court of Appeals of New Mexico.

Feb. 12, 1985.

Bruce Keith, Bruce Keith, P.C., Albuquerque, Gloria T. Svanas, Odessa, Tex., for plaintiff-appellant and third-party defendants-appellants.

Esther Smith Van Soelen, Van Soelen & Greig, Clovis, for defendant and third-party plaintiff-appellee.

## OPINION

WOOD, Judge.

Plaintiff, in her capacity as Trustee of a family trust (Trustee), sought damages from defendant on the basis of its response to a notice of tax levy from the United States Department of the Treasury, Internal Revenue Service (IRS). Defendant moved to dismiss, relying on a federal court judgment. The trial court granted the motion; Trustee appealed. We discuss: (1) the procedural posture; (2) the effect of the federal judgment; and (3) whether the trial court judgment disposed of all of Trustee's claims.

The notice of levy served upon defendant stated that "[t]he taxpayer named at the bottom of this notice" owed the United States a named sum of money for four tax periods, and that money, credits and bank deposits in defendant's possession "and belonging to this taxpayer" are levied upon. The notice made demand upon defendant for the amount necessary to pay the tax liability or for any smaller sum that defendant owed the taxpayer.

A pleading by defendant states that it paid to the IRS, pursuant to the levy, the sum of $52,475.97. A pleading of Trustee's seems to agree. The amount paid does not appear to have been an issue in either the federal case or, so far, in this case. Because of our disposition of the third issue, should the amount paid be disputed, we point out that the record in this appeal does not show that the amount paid has been judicially determined.

What is undisputed is that defendant did make a payment to the IRS pursuant to the levy. The dispute in this case concerns (a) whether defendant's payment was from funds belonging to the taxpayers, and (b) defendant's conduct in making the payment.

Trustee sued the United States in the United States District Court for the District of New Mexico. The case number was Civ. 82–093–JB. The suit was for relief from a wrongful levy by the IRS. United States District Judge Burciaga, on the basis of undisputed facts, granted the government's motion for summary judgment and dismissed Trustee's complaint. There is no suggestion that the federal judgment was not final. Defendant's motion to dismiss, which the trial court granted, relied on Judge Burciaga's opinion. The trial court dismissed Trustee's complaint with prejudice.

**Procedural Posture**

 Trustee complains of findings made and requested findings refused by the trial court. We need not discuss this argument. Inasmuch as matters outside the pleadings were presented to and considered by the trial court, the motion to dismiss became a motion for summary judgment. NMSA 1978, Civ.P.R. 12(b) (Repl.Pamp.1980). In granting the summary judgment, the trial court was not required to make findings. *Skarda v. Skarda*, 87 N.M. 497, 536 P.2d 257 (1975); NMSA 1978, Civ.P.R. 52(B)(1)(a) (Repl. Pamp.1980).

**Effect of the Federal Judgment**

Trustee's complaint alleges that defendant had issued four certificates of deposit

in the name of the trust and that defendant "unlawfully converted" the funds represented by these certificates, together with the accumulated interest. That defendant converted these funds is not disputed. Defendant cashed in these certificates and used the proceeds in its payment in response to the tax levy. Trustee seeks damages, both compensatory and exemplary, on the basis that defendant's use of the proceeds was unlawful. *See Bowman v. Butler,* 98 N.M. 357, 648 P.2d 815 (Ct.App. 1982).

The claim of unlawfulness is based on the undisputed fact that the certificates were issued in the name of the trust and the undisputed fact that the taxpayers named in the notice of levy were two individuals—James E. and Helen V. Edwards. Trustee claims that the trust and the individuals were different entities, and that the funds represented by the certificates issued in the name of the trust were not money, credits or bank deposits belonging to the individual taxpayers named in the notice of levy.

This distinction was the basis of Trustee's federal court suit. The suit was under 26 U.S.C.A. Section 7426(a) (West 1967). All citations to federal statutes in our discussion are to Title 26, U.S.C.A. (West 1967); hereinafter, only the section number will be used. Section 7426(a)(1) authorizes a suit against the United States for a wrongful levy.

> If a levy has been made on property * * any person (other than the person against whom is assessed the tax out of which such levy arose) who claims an interest in * * * such property and that such property was wrongfully levied upon may bring a civil action against the United States in a district court of the United States.

*Id.* at 236.

Judge Burciaga's memorandum opinion analyzes the undisputed facts as to the establishment of the trust and the relationship of James E. and Helen V. Edwards to the trust. Judge Burciaga ruled that the "arrangement is a transparent attempt by the Edwards to transfer tax liability from themselves to the Trust where their consumptive expenses can be taken from pretax rather than post-tax dollars."

The memorandum opinion acknowledges Trustee's claim of contested material facts but points out that each claimed factual dispute was in reality a dispute over the legal implications of undisputed facts. "There is only the legal issue of whether the Trust is a separate legal entity for purposes of a government levy to collect taxes."

The memorandum opinion states:

> Under 26 U.S.C. §§ 674 and 677 (1976), the grantors [the Edwards individuals] are to be taxed as the owners of the Trust assets since they enjoy the power of disposition over the Trust without any approval or consent of an adverse party being required. Because the Trust is a nullity and sham for tax purposes, property held in the name of the Trust is not shielded from levy by the government.

Defendant's motion for summary judgment was based on the memorandum opinion and the summary judgment entered pursuant to the opinion which dismissed Trustee's complaint in the federal suit. The trial court took judicial notice of the decision and order of the federal court. The propriety of judicial notice is not questioned. *See* NMSA 1978, Civ.P.R. 44 (Repl. Pamp.1980). The trial court ruled defendant was required by law to honor the levy, that defendant was entitled to dismissal of Trustee's suit under Section 6332 and that Trustee was "estopped to relitigate the issues determined in Federal Court." Trustee challenges each of these rulings.

The briefs recognize, and we agree, that the key in deciding the effect of the federal judgment in this state court proceeding is the doctrine of collateral estoppel. *Adams v. United Steelworkers of America,* 97 N.M. 369, 373, 640 P.2d 475 (1982) states:

> The purpose of collateral estoppel is to aid in the finality of judgments by preventing parties from endlessly relitigat-

ing the same issues under the guise of different causes of action. Collateral estoppel bars relitigation, as between parties or their privies, of ultimate facts or issues actually and necessarily decided in a prior suit.

*Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326, 99 S.Ct. 645, 649, 58 L.Ed.2d 552 (1979) states:

> Collateral estoppel, like the related doctrine of res judicata,[5] has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation. [Citation omitted.]

---

[5] Under the doctrine of res judicata, a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action. Under the doctrine of collateral estoppel, on the other hand, the second action is upon a different cause of action and the judgment in the prior suit precludes relitigation of issues actually litigated and necessary to the outcome of the first action. 1B J. Moore, Federal Practice ¶ 0.405[1], pp. 622–624 (2d ed. 1974); *e.g., Lawlor v. National Screen Serv. Corp.*, 349 U.S. 322, 326 [75 S.Ct. 865, 867, 99 L.Ed. 1122 (1955)]; *Commissioner v. Sunnen*, 333 U.S. 591, 597 [68 S.Ct. 715, 719, 92 L.Ed. 898 (1948)]; *Cromwell v. County of Sac.* [4 Otto 351, 352–353] 94 U.S. 351, 352–353 [24 L.Ed. 195 (1876)].

New Mexico does not differ in distinguishing res judicata from collateral estoppel. *Adams.*

Our discussion of collateral estoppel has three parts: A. Issues Actually and Necessarily Decided; B. New Mexico Collateral Estoppel; and C. Applicability of Federal Collateral Estoppel.

### A. Issues Actually and Necessarily Decided

Trustee asserts that the issues in the two suits were different, that the issue in the federal suit was the wrongfulness of the government levy while an issue in this suit involves the propriety of defendant's action in turning over the proceeds of the certificates. Trustee asserts that the federal court suit did not actually or necessarily determine any issue as to defendant's con-

duct. This argument is superficial; it fails to recognize that collateral estoppel involves issue preclusion, *Adams*, and that the preclusion question is concerned with the claimed distinction between the Edwards individuals and Trustee.

The applicable portion of Section 6332(a) provides that "any person in possession of * * * property or rights to property subject to levy upon which a levy has been made shall, upon demand * * * surrender such property or rights * * *." Section 6332(c) provides for personal liability of a person who fails or refuses to surrender any property or rights to property. Section 6332(d) provides that a person in possession of property or rights to property, upon which a levy has been made, who surrenders that property or rights to property upon demand "shall be discharged from any obligation or liability to the delinquent taxpayer with respect to such property or rights to property arising from such surrender or payment."

■ The above statutes are federal substantive law which we must apply. *Adams v. United Steelworkers of America*. Their application in this case depends upon whether the levy upon the certificates in the name of the trust was wrongful. If not wrongful, defendant's payment was required by and protected by the federal statutes.

Trustee's claim in this suit, whether called conversion, negligence or breach of fiduciary duty, is that defendant's response to the levy was unlawful. This claim involves the payment of funds realized from the certificates in response to the levy. Under federal law, defendant was required to do so if the levy was proper. Thus, the issue in this case, in connection with payment of the funds, is whether the levy was wrongful. That issue was actually decided in the federal suit.

Trustee asserts that the federal court decision of no wrongful levy was not necessary. This overlooks her own claim in the federal suit. The claimed wrongfulness of the levy was that there was a distinction

between the Edwards individuals and the trust. Inasmuch as wrongfulness depended on that distinction, the federal suit necessarily had to determine whether that distinction existed. The federal court held that the Edwards individuals, named in the levy, were the owners of the trust assets for federal tax purposes and that the trust was a sham and a nullity. In this suit, Trustee again asserts the same distinction.

We have pointed out that we must apply federal substantive law. Trustee asserts that this is incorrect, that the validity of the trust and its existence as a discrete entity is to be decided under New Mexico law. We disagree. *See Hook v. Hook*, 101 N.M. 390, 683 P.2d 507 (1984); *Chavez v. Atchison, Topeka & Santa Fe Railway Co.*, 77 N.M. 346, 423 P.2d 34 (1967); *Vivian v. Atchison, Topeka & Santa Fe Railway Co.*, 69 N.M. 6, 363 P.2d 620 (1961); *Evans v. Atchison, T. & S. F. Ry. Co.*, 37 N.M. 218, 20 P.2d 932 (1933). Whether the trust is or is not a valid and discrete entity for matters other than the federal tax involved in this suit is not an issue. The issue is the propriety of defendant's payment pursuant to a levy for unpaid federal taxes. That question depends entirely on the federal statutes and we must apply those statutes.

Trustee contends that even if federal statutes apply, defendant's duty to surrender the proceeds of the certificates in response to the levy depends upon the taxpayers (the Edwards individuals) being the owners of the property. We assume this is true. *See United States v. National Bank of Commerce*, 726 F.2d 1292 (8th Cir.1984), *cert. granted*, —— U.S. ——, 105 S.Ct. 775–76, 83 L.Ed.2d 771 (1985). However, this does not show a lack of identity of issues between the federal suit and this suit. It was expressly held in the federal suit that the Edwards individuals were the owners of the trust assets for federal tax purposes.

■ To the extent that Trustee's claim is based on defendant's alleged wrongful payment of the funds from the certificates, there is an identity of issues between the federal suit and this suit.

**B. New Mexico Collateral Estoppel**

■ The New Mexico rule is that for collateral estoppel to apply, the same parties, or their privies, must have been involved in both suits. *Adams; Torres v. Village of Capitan*, 92 N.M. 64, 582 P.2d 1277 (1978). This requirement has been repeatedly stated in New Mexico decisions. *See City of Santa Fe v. Velarde*, 90 N.M. 444, 564 P.2d 1326 (1977), and cases therein cited. This court has applied the rule stated by the supreme court. *Poorbaugh v. Mullen*, 96 N.M. 598, 633 P.2d 706 (Ct.App. 1981), and cases therein cited.

■ The reason given for the "same parties" requirement is the doctrine of mutuality. The mutuality requirement prevents a litigant from invoking the conclusive effect of a judgment unless that litigant would have been bound if the judgment had gone the other way. Dissatisfaction with the mutuality requirement resulted in a "modern" view of mutuality, which dispenses with the "same parties" requirement. *Atencio v. Vigil*, 86 N.M. 181, 521 P.2d 646 (1974). The modern view has two aspects—defensive collateral estoppel, *see Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971), and offensive collateral estoppel, *see Parklane Hosiery Co. v. Shore*.

Defendant was not a party to the federal suit. The collateral estoppel used in this case is a defensive collateral estoppel. This defense use is appropriate only if identity of parties is not required. The supreme court considered such a defensive use in *Atencio v. Vigil* and stated: "We are not inclined to adopt the 'modern' view with respect to mutuality upon the facts of this case." 86 N.M. at 183, 521 P.2d 646. Since *Atencio*, the supreme court has repeated the same parties requirement without discussion. *Adams; Torres*. This court was obliged to follow. *El Paso Natural Gas Co. v. Kysar Insurance Agency, Inc.*, 93 N.M. 732, 605 P.2d 240 (Ct.App.

1979). We do not agree with defendant's suggestion that the supreme court's adoption in *Three Rivers Land Co. v. Maddoux*, 98 N.M. 690, 652 P.2d 240 (1982), of specific Restatement of Judgment provisions has opened up the "same parties" requirement in New Mexico. The Restatement of Judgment provisions adopted in *Three Rivers* dealt with "cause of action" for res judicata purposes. Res judicata is not involved in this case.

■ The view of this panel is that the "same parties" requirement, at least where collateral estoppel is applied defensively, should be reconsidered in light of the discussion in *Parklane Hosiery Co.* and *Blonder-Tongue*. Such reconsideration, however, must be by the supreme court. *Alexander v. Delgado*, 84 N.M. 717, 507 P.2d 778 (1973).

■ Because the "same parties" requirement was not met in this case, the trial court improperly applied collateral estoppel if New Mexico law applies. The inquiry, then, is whether New Mexico law applies.

## C. Applicability of Federal Collateral Estoppel

*Brown v. DeLayo*, 498 F.2d 1173, 1175–76 (10th Cir.1974), states:

The change in identity of parties because of inclusions and exclusions of certain New Mexico boards and officials is of no moment. The application of collateral estoppel in federal courts is not grounded upon the "mechanical requirements of mutuality." *P I Enterprises v. Cataldo*, 1 Cir., 457 F.2d 1012, 1015. The test is whether a litigant has had a "full and fair opportunity for judicial resolution" of the issue. *Blonder-Tongue Laboratories, Inc., [sic] v. University of Illinois Foundation*, 402 U.S. 313, 328, 329, 91 S.Ct. 1434 [1442, 1443], 28 L.Ed.2d 788.

*See also Lujan v. United States Department of the Interior*, 673 F.2d 1165 (10th Cir.1982).

Does the federal collateral estoppel rule apply in this case? This question has two aspects: (1) the basis for its application; and (2) whether New Mexico decisions prevent its application.

### 1. Basis for Applying Federal Collateral Estoppel

18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure: Jurisdiction* (1981) (hereinafter cited as 18 Federal Practice & Procedure § ____) is an extended discussion on res judicata. 18 Federal Practice & Procedure Section 4402 indicates that the discussion uses res judicata in its broader sense. This broader sense encompasses both res judicata and collateral estoppel as used in New Mexico. 18 Federal Practice & Procedure Sections 4466 to 4469 identify various situations when the question of the effect of a prior judgment may arise—between federal courts, between state courts, between federal and state courts, between state and federal courts. Other sections in 18 Federal Practice & Procedure identify other situations—Section 4470 on exclusive federal jurisdiction, Section 4473 on foreign judgments, Section 4474 on criminal convictions. Degnan, *Federalized Res Judicata*, 85 Yale L.J. 741 (1976) also reflects this variety.

The variety of situations is not our concern in this case; the various "mutations in estoppel doctrine are not before us * * *." *Blonder-Tongue*, 402 U.S. at 327, 91 S.Ct. at 1442. Our situation involves a federal judgment that decided a federal question, and the preclusive effect of an issue actually and necessarily decided in the federal suit in subsequent state proceedings. Is the preclusive effect in this situation to be decided by federal or state rules of collateral estoppel?

18 Federal Practice & Procedure § 4468 states:

It would be unthinkable to suggest that state courts should be free to disregard the judgments of federal courts, given the basic requirements that state courts honor the judgments of courts in other states and that federal courts must honor state court judgments. The suggestion is so unthinkable that the rule

requiring state courts to honor the res judicata effects of federal court judgments has been stated in an unbroken line of cases that do not offer any clear judicial thought or explanation. The basic rule is explored in this section primarily from the perspective of federal question judgments.

*Id.* at 648–49 (footnotes omitted).

After a discussion of the various explanations for the rule, Section 4468 continues:

The [United States] Supreme Court has consistently adhered to the proposition that it has jurisdiction to review state decisions that deal with the res judicata effects of federal judgments. At least to this extent, it is clear that it believes that a federal question is involved.

*Id.* at 651.

The "federal question involved" is not the federal question decided in the prior federal judgment. Rather, the federal question is the effect to be given the prior federal judgment. Footnote 11 in Section 4468 reads: " 'As the contention is that the ruling below disregarded decrees of a court of the United States it raised a federal question * * *.' *Stoll v. Gottlieb*, 1938, 59 S.Ct. 134, 135, 305 U.S. 165, 167, 83 L.Ed. 104."

Section 4468 continues:

The conclusion that state courts are obliged to honor the res judicata effects of federal court judgments does not automatically identify the body of rules that measure those effects. * * *

\* \* \* \* \* \*

* * * [T]he decisions that focus directly on the effects of federal question judgments leave no doubt that federal rules measure at least most res judicata questions.

*Id.* at 654, 656. *See Limbach v. Hooven & Allison Co.*, 466 U.S. 353, 104 S.Ct. 1837, 80 L.Ed.2d 356 (1984).

Degnan, *Federalized Res Judicata, supra,* is in general agreement with the foregoing. The article states:

At its root is the constitutional provision that the federal judicial power extends only to cases and controversies. To decide a case or controversy implies some binding effect. A judgment or decree that lacked finality would constitute something other than an exercise of the judicial power. If that principle be accepted (and it has rarely been denied), it seems inappropriate that some other sovereignty—the states—should have ultimate authority to determine *what* binding effect the judgment has and on whom.

\* \* \* \* \* \*

The ultimate reason for this conclusion is that it is in the nature of the judicial power to determine its own boundaries.

85 Yale L.J. at 768–69 (footnote omitted) (emphasis in original).

Restatement (Second) of Judgments § 87 (1982) states: "Federal law determines the effects under the rules of res judicata of a judgment of a federal court." Comment b suggests: "Where the principal relationship is regulated by federal law, the corollary relationships appropriately may also be governed by a uniform federal rule, whether the subsequent action is in federal or state court." *See* Annot., 19 A.L.R.Fed. 709 (1974).

Professor Degnan, 85 Yale L.J. at 770, suggests we look to state court decisions to determine the acceptance of the rule that federal collateral estoppel law applies to determine the effect of a federal judgment on a federal question in subsequent state court proceedings. Sometimes the issue has not been identified because other preclusion issues were controlling. *See Nell v. International Union of Operating Engineers,* 427 So.2d 798 (Fla.App. 4th Dist.1983); *Romano v. Trucking Employees of North Jersey Welfare Fund, Inc.,* 427 So.2d 802 (Fla.App. 4th Dist.1983). *Hanson v. Oregon Department of Revenue,* 294 Or. 23, 653 P.2d 964 (1982), did not have to choose between the federal and state rules of collateral estoppel because the rules were the same. *See also Ron Tonkin Gran Turismo, Inc. v. Wakehouse Motors, Inc.,* 46 Or.App. 199, 611 P.2d 658

(1980). *Hanson* had factual issues as to tax liability similar to our case. The rule that the federal law as to issue preclusion controls was applied in the following cases. *Levy v. Cohen,* 19 Cal.3d 165, 137 Cal.Rptr. 162, 561 P.2d 252 (1977); *Martin v. Martin,* 2 Cal.3d 752, 87 Cal.Rptr. 526, 470 P.2d 662 (1970); *Hays v. Louisiana Dock Co.,* 117 Ill.App.3d 512, 72 Ill.Dec. 687, 452 N.E.2d 1383 (1983); *Shell Oil Co. v. Texas Gas Transmission Corp.,* 176 So.2d 692 (La.App.1964). As *Anderson v. Phoenix Investment Counsel of Boston, Inc.,* 387 Mass. 444, 440 N.E.2d 1164, 1167 (1982) states: "When a State court is faced with the issue of determining the preclusive effect of a Federal court's judgment, it is the Federal law of res judicata which must be examined."

## 2. Whether New Mexico Decisions Prevent the Application of the Federal Collateral Estoppel Rule

The federal law of collateral estoppel governs the preclusive effect of the federal judgment in this case which decided a federal question. Unless obliged to follow a contrary decision of our supreme court, *see Alexander v. Delgado,* we will apply it.

In the following cases, the effect of prior federal judgments was discussed. However, no case discussed whether federal or state law applied in determining the effect of the federal judgment. *United Nuclear Corp. v. General Atomic Co.,* 98 N.M. 633, 651 P.2d 1277 (1982); *Mundy & Mundy, Inc. v. Adams,* 93 N.M. 534, 602 P.2d 1021 (1979); *Maroney v. United States Fidelity & Guaranty Co.,* 81 N.M. 111, 464 P.2d 401 (1970); *Salazar v. Murphy,* 66 N.M. 25, 340 P.2d 1075 (1959); *Williams v. Miller,* 58 N.M. 472, 272 P.2d 676 (1954); *Pioneer Irrigating Ditch Co. v. Blashek,* 41 N.M. 99, 64 P.2d 388 (1937); *El Paso Natural Gas Co. v. Kysar Insurance Agency, Inc.*

 New Mexico has not held that the New Mexico law of collateral estoppel applies to the situation in this case. Accordingly, we hold that the federal law of collateral estoppel applies.

 Anticipating this result, Trustee asserts that the federal doctrine of collateral estoppel should not be applied in this case. Trustee does not place this argument in any procedural context. Defendant moved for summary judgment relying on the federal proceedings. Defendant's showing was that the distinction between the trust and the Edwards individuals was decided in the federal case. This fact, plus the application of federal tax statutes and the application of the federal law of collateral estoppel, prima facie entitled defendant to summary judgment.

 Trustee's contention in this appeal is that the federal rule of collateral estoppel is not applicable because (1) Trustee did not have a full and fair opportunity to litigate the trust's separate identity in the federal case; and (2) application of the federal rule of collateral estoppel is contrary to justice and equity. *See Blonder-Tongue.* These contentions were not raised in the trial court. They are not before us for review because they are raised for the first time on appeal. NMSA 1978, Civ.App.R. 11 (Repl.Pamp.1984).

 Further, the "full and fair opportunity to litigate" would require some showing as to the factual aspects of the federal litigation and here no such showing has been made, either in the trial court or this court. The only showing is that the federal result was based on undisputed facts, and this raises no issue as to the absence of a full and fair opportunity to litigate. It was Trustee's burden to show there was a factual issue as to that opportunity. *Lent v. Employment Security Commission of the State of New Mexico,* 99 N.M. 407, 658 P.2d 1134 (Ct.App.1982). The "justice and equity" aspect might have a factual component, but Trustee did not meet her burden of showing such a factual issue.

Trustee seems to assert that her opposition to the summary judgment was based solely on legal issues. From the authorities cited in *Torres v. Village of Capitan,* the law as to rulings on legal issues appears to be the same in New Mexico and

the federal courts. We assume that it is the same. *Torres* states:

> Where a judge's ruling on a matter of law is intertwined with the facts of a particular case it is collaterally binding in a subsequent suit ... because the ruling on the factual issue, which is final under the doctrine of collateral estoppel, cannot be separated from the legal conclusion and thus both must be binding if the factual determination is to be. * * *. However, a conclusion or statement purely of law which is not dependent for its meaning or validity on the facts of a particular case is not binding on the judge in a later suit * * * "litigants have no vested right to an erroneous conclusion of law."

92 N.M. at 68, 582 P.2d 1277 (citations omitted).

■ Trustee asserts: "[T]he trial court would not be bound under collateral estoppel by the federal court's conclusion of law regarding the trust." That conclusion was that the trust was a sham and nullity for federal tax purposes. That conclusion was based on, and inseparable from, the undisputed facts showing the Edwards individuals had the power of disposition over the trust without the approval or consent of an adverse party being required. Judge Burciaga's legal ruling was not independent of the facts. The ruling on the facts and the legal conclusion are binding.

To the extent the summary judgment was based on defendant's payment to the IRS from funds realized from certificates issued by defendant in the name of the trust, the summary judgment is affirmed. As Trustee conceded in the trial court, that was the main issue.

**Whether the Trial Court's Summary Judgment Disposed of All the Trustee's Claims**

The summary judgment was based on the estoppel effects of the federal judgment. The federal judgment did not actually or necessarily decide some of Trustee's claims. The trial court proceedings show that Trustee was complaining of the following: (a) that defendant made no attempt to give any notice to Trustee that a levy had been made; (b) that defendant paid, in response to the levy, with unseemly haste, not taking the time allowed for a response; (c) that defendant, in responding to the levy, cashed in all of the certificates issued in the name of the trust, yet at that time a substantial sum was in a passbook account in the name of the Edwards individuals and funds were not taken from the passbook account; that the passbook account paid a lower rate of interest and defendant chose to respond by paying the proceeds from certificates that paid a higher rate of interest; and (d) that, in cashing in the certificates, defendant charged Trustee, and kept for its own purposes, a penalty imposed when certificates are cashed in prior to maturity.

■ We have not attempted to catalogue all of Trustee's claims. Our point is that claims are made directed to conduct by defendant that is separate from the fact of paying pursuant to the levy. Nor do we intimate whether these claims state a legal basis for relief. We only hold that the federal judgment did not decide such issues and, therefore, collateral estoppel does not bar the litigation of these claims in this lawsuit.

Defendant's only showing in support of summary judgment was the memorandum and decision in the federal suit. As to issues not decided in the federal suit, defendant did not make a prima facie showing entitling it to summary judgment. As to the issues encompassed in the preceding two paragraphs, the summary judgment is reversed. As to these issues, the cause is remanded to the trial court for further proceedings.

No costs are awarded.

IT IS SO ORDERED.

DONNELLY, C.J., and ALARID, J., concur.