Frank LUJAN, Plaintiff-Appellant,

v.

UNITED STATES DEPARTMENT OF THE INTERIOR and James G. Watt, Secretary, Defendants-Appellees.

No. 80–1291.

United States Court of Appeals, Tenth Circuit.

March 29, 1982.

**1166**

Jose A. Sandoval, Espanola, N. M. (Bill Piatt, Santa Fe, N. M., with him on the brief), for plaintiff-appellant.

Robert D. Clark, Washington, D. C. (and Robert L. Klarquist, Attys., Dept. of Justice, Washington, D. C.; Carol E. Dinkins, Asst. Atty. Gen., Washington, D. C., Don V. Svet, U. S. Atty., and Raymond Hamilton, Asst. U. S. Atty., Albuquerque, N. M., with him on the brief), for defendants-appellees.

Before McWILLIAMS, McKAY, and SEYMOUR, Circuit Judges.

McWILLIAMS, Circuit Judge.

On June 5, 1979, Frank Lujan, the appellant, instituted the present proceeding in the United States District Court for the District of New Mexico, against the United States Department of the Interior, its Secretary, and the United States. By amended complaint, Lujan challenged a decision of the Interior Board of Land Appeals (IBLA) and, in connection therewith, sought a trial *de novo.* The decision thus challenged appears as *Frank Lujan,* 40 IBLA 184 (1979).

The defendants filed a motion to dismiss, which was granted, and the district court entered judgment dismissing the action on the ground that it lacked subject matter jurisdiction. The district court determined that the Administrative Procedure Act, 5 U.S.C. §§ 701–706 (1976), does not contain an implied grant of subject matter jurisdiction to federal courts to hear all appeals of administrative decisions.[1] Thus, the district court reasoned, jurisdiction was dependent upon whether the complaint raised a federal question. Finding that the gravamen of the complaint was title to real property located in the State of New Mexico and that no violation of Lujan's rights as secured by federal statute or by the federal constitution had occurred, the trial court found that no federal question was presented.[2] In his memorandum opinion, the trial judge also stated that even if subject matter jurisdiction existed, he would "refrain" from proceeding further in the matter and "defer" to a state court proceeding previously instituted, which involved the same matter Lujan sought to litigate in federal court.[3] *Lujan v. United States Dep't of the Interior,* No. CIV–79–455C (D.N.M. Feb. 11, 1980). Lujan appeals from the judgment dismissing his cause of action. Some background facts are essential to an understanding of the matter.

1. On appeal, Lujan appears to have abandoned his original claim that the APA authorized judicial review of the Secretary's decision in this case. In any event, we have determined previously that the APA is not an independent grant of federal jurisdiction. *Merrion v. Jicarilla Apache Tribe,* 617 F.2d 537, 540 (10th Cir. 1980), *aff'd on other grounds,* — U.S. —, 102 S.Ct. 894, 71 L.Ed.2d 21 (1982). *Accord, Califano v. Sanders,* 430 U.S. 99, 105–07, 97 S.Ct. 980, 984–985, 51 L.Ed.2d 192 (1977).

2. Because of our dismissal of this appeal, we need not address the merits of the district court's determination that it lacked subject matter jurisdiction under 28 U.S.C. § 1331 (1976).

3. Although abstention from the exercise of federal jurisdiction is the exception and not the rule, *Colorado River Water Conserv. Dist. v. United States,* 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976); *Hackbart v. Cincinnati Bengals, Inc.,* 601 F.2d 516 (10th Cir.), *cert. denied,* 444 U.S. 931, 100 S.Ct. 275, 62 L.Ed.2d 188 (1979), the Supreme Court has recognized the rule that the court first assuming jurisdiction over property may exercise that jurisdiction to the exclusion of other courts. *Colorado River Water Conserv. Dist. v. United States,* 424 U.S. at 818, 96 S.Ct. at 1246; *Donovan v. City of Dallas,* 377 U.S. 408, 412, 84 S.Ct. 1579, 1582, 12 L.Ed.2d 409 (1964).

Frank Lujan and Michael Martinez, both farmers and ranchers, are abutting property owners in San Miguel County, State of New Mexico, and there has been a long-standing dispute as to the proper location of their common boundary line. In 1954, Martinez' predecessor-in-interest, Manuel Gallegos, brought a quiet title action against Lujan seeking to quiet title to the tract of land here involved. In that action Lujan filed a disclaimer, and judgment quieting title in *Gallegos* was entered. *Gallegos v. Lujan*, No. 15154 (San Miguel County Dist. Ct. Mar. 31, 1954).

In 1970, the Bureau of Land Management (BLM) conducted a resurvey of certain federal land lying to the west of the contiguous tracts of land owned by Lujan and Gallegos, such public land, however, abutting neither tract. The stated purpose of the BLM's resurvey was to determine the boundaries of the public lands to the west of the Lujan and Gallegos properties in accordance with the original survey conducted by the United States in 1880. The 1970 resurvey was made pursuant to the provisions of 43 U.S.C. § 772 (1976). That statute provides, in relevant part, as follows:

> The Secretary of the Interior may ... in his discretion cause to be made ... such resurveys or retracements of the surveys of public lands as, after full investigation, he may deem essential to properly mark the boundaries of the public lands remaining undisposed of; *Provided*, That no such resurvey or retracement shall be so executed as to impair the bona fide rights or claims of any claimant, entryman, or owner of lands affected by such resurvey or retracement.

The BLM's 1970 resurvey did not result in any enlargement of federal land at the expense of either Lujan or Gallegos, who, as indicated, then owned the land later conveyed to Martinez. In the course of the resurvey, however, certain corner markers were relocated, and such relocation arguably affected the location of the boundary line between the Lujan tract and the Gallegos tract, to the end that Gallegos' acreage would be somewhat increased at the expense of Lujan.

In 1974, Martinez acquired the property to which Gallegos had quieted title in 1954. It appears that shortly thereafter a controversy arose between Martinez and Lujan as to the exact location of their common boundary. Martinez employed a private surveyor to determine the parameters of his land, and then, in 1976, Martinez brought an ejectment action against Lujan in a New Mexico state court. In that action, Martinez relied principally on the quiet title action brought by his predecessor-in-interest, Gallegos, and claimed that Lujan was occupying land title to which had been quieted in Gallegos.

In 1977, some seven years after the 1970 resurvey, and one year after Martinez brought an ejectment action against Lujan in the state court, Lujan sought, and obtained, a review of the 1970 resurvey in an administrative hearing in the Department of the Interior. Martinez was permitted to intervene in that proceeding. An administrative law judge (ALJ) held an evidentiary hearing on the matter on November 30 and December 1, 1977, and upheld the validity of the resurvey and the accuracy thereof. In April, 1979, the IBLA affirmed the ALJ. *Frank Lujan*, 40 IBLA 184 (1979). It was in this setting that Lujan, in June, 1979, instituted the present proceeding wherein he sought review of the IBLA's validation of the 1970 resurvey and a trial *de novo* to determine the accuracy thereof.

While Lujan's appeal from the federal district court's judgment of dismissal was pending in this Court, Martinez' state court ejectment action against Lujan proceeded to a final disposition. The New Mexico state trial court granted Martinez' motion for summary judgment and enjoined Lujan from entering on to Martinez' land. *Martinez v. Lujan*, No. 21,677 (San Miguel County Dist.Ct. Nov. 25, 1980). On appeal, the New Mexico Supreme Court affirmed the summary judgment thus entered in favor of Martinez. *Martinez v. Lujan*, No. 13,521 (N.M. Oct. 26, 1981). Lujan did not

seek review by the United States Supreme Court of the judgment of the New Mexico Supreme Court. It is in this posture that we now address the appeal.

By supplemental brief, the government asserts that the doctrine of *res judicata* precludes further consideration of the present appeal. In this regard, the government states that the only purpose of the proceeding in federal district court was to determine judicially the accuracy of the 1970 resurvey as such might affect the location of the common boundary between the Lujan and Martinez properties. That particular matter, argues the government, was considered in the ejectment action in state court. The state court ejectment action having now been finally determined, and the location of the common boundary line between Lujan and Martinez having been forever fixed, the government argues that such renders applicable the doctrine of *res judicata*. Lujan does not dispute the events which form the basis of the government's *res judicata* argument. Although *res judicata* is an affirmative defense and normally must be raised in the trial court, the peculiar facts of this case and the interests of judicial economy suggest that we consider this argument on its merits. *See Westwood Chemical Co. v. Kulick*, 656 F.2d 1224, 1227–28 (6th Cir. 1981); *Boone v. Kurtz*, 617 F.2d 435, 436 (5th Cir. 1980); *Bennett v. Commissioner*, 113 F.2d 837 (5th Cir. 1940).

■ *Res judicata* is sometimes used interchangeably with the doctrine of collateral estoppel.[4] The doctrine of collateral estoppel precludes relitigation of issues actually litigated and determined in a prior lawsuit. The doctrine may be applied even though the party asserting it was not a party in the prior case. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979); *Blonder-Tongue Labs., Inc. v. University of Ill. Foundation*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971). Therefore, in this case, the doctrine of collateral estoppel applies even though the defendants herein were not parties to the state court proceedings. The significant fact is that the party against whom estoppel is being asserted, Lujan, was accorded a full and fair opportunity to litigate in the state court proceeding the very issues which he now seeks to relitigate in the federal district court, namely, the accuracy of the 1970 BLM resurvey and the effect thereof, if any, on his common boundary line with Martinez. The location of that common boundary line now has been finally determined by the state court.

■ It should be noted that in the ejectment proceeding in the state trial court, Martinez established, by affidavits, a *prima facie* case supporting his ejectment action against Lujan. Martinez presented the 1954 decree quieting title to the disputed property in Martinez' predecessor-in-interest. He also presented Lujan's disclaimer of any rights to the property. Martinez also produced a private survey, which relied upon the relocated corners set by the BLM in 1970. This private survey supported his claims. It appears from the record that Lujan offered little, or nothing, to controvert the affidavits offered by Martinez. Specifically, Lujan filed no affidavits in support of his assertion in this Court that he had relied upon the pre-1970 boundaries. Further, in the state court proceeding, Lujan did not even plead 43 U.S.C. § 772 by way of defense,[5] nor did he raise as a de-

---

4. The terms *"res judicata"* and "collateral estoppel" apply to related but distinct doctrines. Under *res judicata*, parties to a final judgment or their privies are barred from bringing further claims based on the same cause of action. *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979); *Cromwell v. County of Sac*, 94 U.S. 351, 352–53, 24 L.Ed. 195 (1877). Under collateral estoppel, an actual and necessary determination of an issue by a court of competent jurisdiction is conclusive in subsequent cases based on a different

cause of action but involving a party to the prior litigation. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n.5, 99 S.Ct. 645, 649, 58 L.Ed.2d 552 (1979). The preclusion issue presented in this matter is more accurately a question of collateral estoppel.

5. In *United States v. Reimann*, 504 F.2d 135, 138–39 (10th Cir. 1974) and *United States v. Doyle*, 468 F.2d 633, 636 (10th Cir. 1972), we recognized that language of 43 U.S.C. § 772 prevents a federal resurvey from adversely af-

fense the accuracy of the 1970 resurvey, though he had the opportunity to do so. Hence, this is not an instance, as suggested by counsel, where Lujan never had his day in court. Lujan did have his day in court and, apparently, he slept on whatever rights he had.

Appeal dismissed.

fecting the established and recognized property rights of private landowners abutting the public lands. The New Mexico Supreme Court had recognized this principle even earlier. *Ward v. Rodriguez*, 43 N.M. 191, 88 P.2d 277, *cert. denied*, 307 U.S. 627, 59 S.Ct. 837, 83 L.Ed. 1511 (1939). Lujan's failure to rely upon such precedents in the state court proceedings prevents his reliance upon them now. Lujan had an opportunity to present his case of good faith reliance upon the pre-1970 boundaries to both the state trial court and the New Mexico Supreme Court. His failure to do so does not prevent the government defendants in this action from asserting collateral estoppel against him.