Betty Janell GOSS, Plaintiff-Appellant,

v.

Lloyd Wayne GOSS, Defendant-Appellee.

No. 80–2094.

United States Court of Appeals,
Tenth Circuit.

Dec. 5, 1983.

Dean Peterson, Ada, Okl. (Austin R. Deaton, Jr., of Deaton, Gassaway & Davison, Inc., Ada, Okl., was on the brief), for plaintiff-appellant.

James T. Branam, Dennis & Branam, Antlers, Okl., for defendant-appellee.

Before HOLLOWAY, McWILLIAMS and SEYMOUR, Circuit Judges.

HOLLOWAY, Circuit Judge.

This case concerns the effect to be given in federal court to a prior state court determination of nondischargeability of maintenance and support obligations under former Bankruptcy Act § 17a(7), 11 U.S.C. § 35(a)(7) (1976). The District Court of Pontotoc County, Oklahoma, held in a garnishment proceeding involving the parties to this appeal that certain obligations embodied in a divorce decree were in the nature of maintenance and support and thus were not dischargeable in bankruptcy. In a subsequent proceeding, the Bankruptcy Court for the Eastern District of Oklahoma held that it was not bound by the prior state court judgment; the bankruptcy court concluded that the debts were not in the nature of maintenance and support and thus were dischargeable. The District Court for the Eastern District of Oklahoma

affirmed the judgment of the bankruptcy court.

We hold that the doctrine of collateral estoppel should have been applied in the federal bankruptcy proceedings. The prior state court determination that the obligations were in the nature of maintenance and support and therefore were nondischargeable should have been held binding in this bankruptcy case. Accordingly we must reverse.

I

The parties were divorced on October 10, 1978. In the divorce decree, Judge Jones of the District Court of Pontotoc County, Oklahoma, awarded plaintiff "alimony to be paid out of the real and personal property of the defendant." II R. 28, Exhibit 1, at 1. The judge ordered that "the real and personal property presently owned by the parties ... be divided between them as follows:"

> Plaintiff shall have a judgment against the defendant in the sum of Twenty-Five Thousand Dollars ($25,000), in lieu of a further specific division of property rights .... The defendant shall also pay to the plaintiff the additional sum of Nineteen Thousand Eight Hundred Dollars ($19,800) as alimony, which shall be payable in monthly installments of Two Hundred Seventy-Five Dollars ($275), the first of which shall become due and payable on or before November 1, 1978, and which is hereby declared to be in further division of the parties' property rights.

II R. 28, Exhibit 1, at 2. The court concluded that "[t]he money and alimony judgments awarded the Plaintiff herein shall constitute liens upon the real and personal property awarded the Defendant in this decree." II R. 28, Exhibit 1, at 3. After a subsequent hearing, the court ordered that defendant pay plaintiff's attorney $5,000 in fees for services rendered in the divorce proceeding. II R. 29, Exhibit 2.[1]

---

1. Although defendant filed a certificate of appeal with the Oklahoma Supreme Court, II R. 30, Exhibit 3, the record before us does not indicate whether the Oklahoma Supreme Court took any action with regard to the divorce decree.

On March 6, 1979, the judge held a hearing on defendant's failure to meet his financial obligations under the divorce decree. The judge found that defendant was "able to make monthly payments on the Plaintiff's judgment in this cause." II R. 34, Exhibit 7. The judge ordered that defendant pay plaintiff $500 per month. *Id.*

On March 22, 1979, defendant filed a bankruptcy petition in the Bankruptcy Court for the Eastern District of Oklahoma. In the petition, defendant named plaintiff as the sole creditor and listed as debts the $25,000 property settlement, the $19,800 "alimony" and the $5,000 attorneys' fees.[2] Plaintiff did not object to the proposed general discharge.[3] The bankruptcy court issued a general discharge to defendant on June 27, 1979. I R. 1.

Plaintiff began garnishment proceedings in the District Court of Pontotoc County on October 10, 1979 to collect on the divorce judgment for $19,800 "alimony" and $5,000 attorneys' fees. Defendant objected on the ground that the debts had been discharged. After a hearing, Judge Jones held on December 7, 1979, that "neither of the judgments were dischargeable in bankruptcy." II R. 35, Exhibit 8. The judge stated that:

> the judgment of Nineteen Thousand Eight Hundred Dollars ($19,800) granted the Plaintiff in the decree of divorce of October 10, 1978, in this case was alimony awarded the Plaintiff for her support and maintenance and ... that the attorneys' fee of Five Thousand Dollars ($5,000) awarded the plaintiff's attorneys' in this cause was also in the nature of a support

and maintenance allowance for the plaintiff.

*Id.*

Meanwhile, on October 29, 1979, plaintiff filed a petition in bankruptcy court to revoke defendant's discharge in bankruptcy on the ground that defendant had fraudulently concealed his assets.[4] Plaintiff later waived this complaint because she "was unable to prove any allegation of fraudulent conduct." I R. 10. Then, "for the benefit of the parties," the bankruptcy court on April 4, 1980 (four months after the state court decision) decided to "go forward and lay at rest the dischargeability question of the judgments in the divorce action." *Id.*

The court noted that "[u]nder Section 17 of the Bankruptcy Act, the dischargeability of any debt must be determined by the Bankruptcy Court." *Id.* The court stated that the judgments awarded in the divorce decree constituted a property settlement, and not alimony, under Oklahoma law. The court held that because:

> [a]t the time of the filing of the bankruptcy, the judgments in the Divorce Decree at Pontotoc County were for property settlement, ... we do not believe after the bankruptcy was filed, and after the discharge was granted, that the District Court of Pontotoc County had the authority to attempt to revise the Divorce Decree as the rights of the Bankrupt were fixed at the time of the filing of the Bankruptcy Petition on March 22, 1979.

*Id.* After noting that "apparently the District Court of Pontotoc County does not desire to follow the Federal Statutes dealing with dischargeability of debts," the bankruptcy court held that "the two judg-

---

**2.** Although the bankruptcy petition is not a part of the record on appeal, the parties agree in the briefs that the petition included these debts. Brief of Appellant at 5–6; Brief of Appellee at 2.

**3.** A creditor is required to object to a proposed general discharge within a period prescribed by the bankruptcy court if he contends that a listed debt is nondischargeable under §§ 17a(2) & (4), or that a debt is nondischargeable under § 17a(8) and meets certain requirements. 11 U.S.C. §§ 32(b)(1), 35(c)(2) (1976). No objection is required if the creditor believes that the

debt is nondischargeable under the other subsections of § 17a, including debts for alimony or maintenance and support under § 17a(7).

**4.** Plaintiff argues on appeal that she took this action in order to recover the $25,000 property settlement awarded in the divorce decree. Brief of Appellant at 7. This judgment was subject to the general discharge in bankruptcy and did not fall within the alimony exception under § 17a(7) of the former Bankruptcy Act, 11 U.S.C. § 35(a)(7) (1976).

ments in the divorce action in Pontotoc County were for property settlement and, therefore DISCHARGED in bankruptcy, and this includes the attorney fee for the [plaintiff]." *Id.* at 2–3.

The district court on September 19, 1980 affirmed the bankruptcy court's decision.

## II

Plaintiff argues that the bankruptcy court should not have redetermined the dischargeability of the $19,800 "alimony" and $5,000 attorneys' fees awards. We agree that the doctrine of collateral estoppel barred the relitigation in the bankruptcy proceedings of the determination of nondischargeability of the debts under § 17a(7) of the former Bankruptcy Act, 11 U.S.C. § 35(a)(7) (1976).[5]

Section 17a listed eight classes of debts which are not dischargeable in bankruptcy. One class of nondischargeable debts was § 17a(7), which included debts for "alimony due or to become due, or for maintenance or support of wife or child." 11 U.S.C. § 35(a)(7) (1976).

■ Section 17c(2) granted exclusive jurisdiction to bankruptcy courts to determine whether particular debts were nondischargeable under §§ 17a(2),[6] (4)[7] or (8).[8] However, with respect to the other classes of debts under § 17a, including debts for alimony or maintenance and support under § 17a(7), state courts possessed jurisdiction

concurrent with that of the bankruptcy court to determine dischargeability. Hence the District Court of Pontotoc County had jurisdiction to decide whether the $19,800 "alimony" and $5,000 attorneys' fees awarded in the divorce decree were nondischargeable under § 17a(7). We must decide whether the bankruptcy court was bound by this prior state court determination that the debts were nondischargeable.

Although the doctrines of res judicata (or claim preclusion) and collateral estoppel (or issue preclusion) are related, this case concerns the application of the latter. As the Supreme Court has stated, "[w]hereas res judicata forecloses all that which might have been litigated previously, collateral estoppel treats as final only those questions actually and necessarily decided in a prior suit." *Brown v. Felsen,* 442 U.S. 127, 139 n. 10, 99 S.Ct. 2205, 2213 n. 10, 60 L.Ed.2d 767 (1979). *See also Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 466 n. 6, 102 S.Ct. 1883, 1889 n. 6, 72 L.Ed.2d 262 (1982); *Montana v. United States,* 440 U.S. 147, 153–54, 99 S.Ct. 970, 973–74, 59 L.Ed.2d 210 (1979); *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 649 n. 5, 58 L.Ed.2d 552 (1979); *Lujan v. United States Department of the Interior,* 673 F.2d 1165, 1168 n. 4 (10th Cir.1982). We conclude that here the doctrine of collateral estoppel barred the bankruptcy court from making a redetermination on nondischargeability under § 17a(7).[9]

---

**5.** This proceeding is governed by the former Bankruptcy Act because defendant's bankruptcy petition was filed before October 1, 1979, the effective date of the new bankruptcy law. *Bankruptcy Reform Act of 1978,* Pub.L. 95–598, §§ 402(a), 403(a), 92 Stat. 2549.

**6.** Debts not subject to discharge include debts that:

> (2) are liabilities for obtaining money or property by false pretenses or false representations, or for obtaining money or property on credit or obtaining an extension or renewal of credit in reliance upon a materially false statement in writing respecting his financial condition made or published or caused to be made or published in any manner whatsoever with intent to deceive, or for willful and malicious conversion of the property of another.

11 U.S.C. § 35(a)(2) (1976).

**7.** Debts not subject to discharge include debts that "(4) were created by his fraud, embezzlement, misappropriation, or defalcation while acting as an officer or in any fiduciary capacity." *Id.* § 35(a)(4).

**8.** Debts not subject to discharge include debts that "(8) are liabilities for willful and malicious injuries to the person or property of another other than conversion as excepted under clause (2) of this subdivision." *Id.* § 35(a)(8).

**9.** Although plaintiff asserts that the doctrine of res judicata bars relitigation of the dischargeability of the debts, on these facts collateral estoppel provides the proper basis on which to examine the bankruptcy court's action. We therefore need not decide whether the doctrine of res judicata applies to bar relitigation because defendant only seeks to relitigate the

In *Brown v. Felsen,* 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979), the Supreme Court held that res judicata does not prevent a bankruptcy court from going beyond the judgment and record in a prior state court proceeding in determining the dischargeability of debts under §§ 17a(2) and (4) of the former Bankruptcy Act. We believe, however, that the decision does not indicate that collateral estoppel would not apply here for two reasons.

First, *Brown v. Felsen,* dealt with the dischargeability of debts under the exclusive jurisdiction of the bankruptcy court. The Court noted that before 1970, res judicata claims concerning dischargeability

> were seldom heard in federal court. Traditionally, the bankruptcy court determined whether the debtor merited a discharge under § 14, but left the dischargeability under § 17 of a particular debt to the court in which the creditor sued, after bankruptcy, to enforce his prior judgment. Typically, that court was a state court.

442 U.S. at 129, 99 S.Ct. at 2208. The Court explained that "[i]n 1970, however, Congress altered § 17 to require creditors to apply to the bankruptcy court for adjudication of certain dischargeability questions, including those arising under §§ 17a(2) and 17a(4)." *Id.* at 129–30, 99 S.Ct. at 2208. The Court concluded that "it would be inconsistent with the philosophy of the 1970 amendments to adopt a policy of res judicata which takes *these* § 17 questions away from bankruptcy courts and forces them back into state courts." *Id.* at 136, 99 S.Ct. at 2212 (emphasis added).

This reasoning is inapplicable to debts for alimony or maintenance and support under § 17a(7) because they were not within the bankruptcy court's exclusive jurisdiction. It would be anomalous to hold that the bankruptcy court could relitigate a prior

state court adjudication of dischargeability under § 17a(7) in light of the congressional grant of concurrent jurisdiction to the state courts to decide this question. This result would be particularly troubling because the "question as to whether the obligations are in the nature of alimony or support [and therefore not dischargeable], as opposed to a property settlement [and therefore dischargeable], is determined by state law." *Nitz v. Nitz,* 568 F.2d 148, 151 (10th Cir. 1977). *See also In re Catlow,* 663 F.2d 960, 962 (9th Cir.1981). Thus, *Brown v. Felsen* does not prevent a bankruptcy court from giving effect to a state court's exercise of its concurrent jurisdiction to determine the dischargeability of particular § 17a(7) debts such as are involved here.

A second reason that *Brown v. Felsen* does not prohibit giving collateral estoppel effect to a prior state court determination on dischargeability under § 17a(7) is that the case "concerns res judicata only, and not the narrower principle of collateral estoppel." 442 U.S. at 139 n. 10, 99 S.Ct. at 2213 n. 10. The Court left open the question whether collateral estoppel effect should be given to a state court judgment in the face of exclusive jurisdiction in the bankruptcy court:

> Because respondent does not contend that the state litigation actually and necessarily decided either fraud or any other question against petitioner, we need not and therefore do not decide whether a bankruptcy court adjudicating a § 17 question should give collateral-estoppel effect to a prior state judgment.

*Id.*

▮▮▮ Courts have disagreed on whether collateral estoppel should apply in dischargeability determinations involving a bankruptcy court's exclusive jurisdiction.[10]

---

same dischargeability issue that the state court decided. In these circumstances, collateral estoppel is clearly operative. *Cf. Blair v. Supreme Court of Wyoming,* 671 F.2d 389, 391 n. 1 (10th Cir.1982).

**10.** Some courts have held that collateral estoppel should not apply in this situation. *See, e.g.,*

*In re Rahm,* 641 F.2d 755, 756 n. 2, 757 (9th Cir.1981) (§ 17a(8)); *In re Kasler,* 611 F.2d 308, 309–10 (9th Cir.1979) (same). Other courts, however, have applied collateral estoppel where the issue was previously litigated by the parties in state court, despite the existence of exclusive jurisdiction in the bankruptcy court. *See, e.g., Spilman v. Harley,* 656 F.2d 224, 227

Where a state court has jurisdiction to determine dischargeability concurrent with that of the bankruptcy court, however, collateral estoppel should be applied. This result is consistent with the congressional design in giving bankruptcy courts exclusive jurisdiction to determine the dischargeability of certain debts, but not others. Giving collateral estoppel effect to a dischargeability determination made by a state court is particularly appropriate under § 17a(7) because, as pointed out earlier, this involves an examination of state law.

The few trial courts that have considered this issue agree that collateral estoppel effect should be given to a state court determination of dischargeability under § 17a(7). *See In re Peterman,* 5 B.R. 687, 691 (Bankr. E.D.Pa.1980) ("[W]e conclude that the application of res judicata and particularly of collateral estoppel to the facts of the instant case precludes relitigation of the dischargeability issue [under the current version of § 17a(7)]."); *Pares v. Pares,* 428 F.Supp. 1005, 1006 (E.D.Wis.1977) ("[P]laintiff [is] prevented by the doctrine of *res judicata* from relitigating the issue of dischargeability of a debt [under § 17a(7)] where that issue has already been decided by a state court."); *cf. Spilman v. Hasley,* 656 F.2d 224, 226 n. 2 (6th Cir.1981) ("With respect to other kinds of dischargeability determinations [*i.e.,* those involving §§ 17a(1), (3), (5), (6) & (7)], the bankruptcy court does not have exclusive jurisdiction and res judicata and collateral estoppel may apply.") (citing *Peterman, supra*); *In re Romeo,* 16 B.R. 531, 534 (Bankr., D.N.J.1981) (collateral estoppel not appropriate where state court determination on dischargeability under 11 U.S.C. § 523(a)(5) [current version of § 17a(7)] based on incomplete record). *But cf. In re Williams,* 3 B.R. 401, 403 (Bankr., N.D.Ga.1980) (bankruptcy court not bound by state court determination that debt for maintenance and support was nondischargeable where that determination was made "as a collateral matter in a contempt proceeding rather than specifically in a proceeding to determine dischargeability").

We conclude that collateral estoppel should be applied here and accordingly hold that relitigation of the determination by the District Court of Pontotoc County was barred. We treat as binding that court's determination that because the $19,800 "alimony" and $5,000 attorneys' fees awarded plaintiff in the divorce decree were in the "nature of a support and maintenance allowance [, . . .] neither of these judgments were dischargeable in bankruptcy." II R. 35, Exhibit 8. All elements of the doctrine of collateral estoppel are satisfied here. First, the issue sought to be precluded is identical to that decided by the state court: whether the $19,800 "alimony" and $5,000 attorneys' fees awards in the divorce decree were for alimony or maintenance and support and thus were nondischargeable under § 17a(7). Second, this issue was actually litigated in the state court proceeding; the court conducted a hearing and heard arguments by counsel for both parties. II R. 35, Exhibit 8. Defendant thus cannot complain that he was denied a "full and fair opportunity" to litigate the issue. *Allen v. McCurry,* 449 U.S. 90, 95, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980). Third, the issue was determined by a valid and final judgment. II R. 35, Exhibit 8. Fourth, the determination of the issue was essential to the prior judgment; the success of plaintiff's garnishment proceedings depended on the nondischargeability of the awards in the divorce decree. *See generally Searing v. Hayes,* 684 F.2d 694, 696–97 (10th Cir.1982) (per curiam); *Lujan v. United States Department of the Interior,* 673 F.2d 1165, 1168 (10th Cir.1982); *Restatement (Second) of Judgments* § 27 (1982).

The bankruptcy court held in the instant case that, as a matter of Oklahoma law, the awards in the divorce decree were for property settlement and not for maintenance and support, and thus were dis-

(6th Cir.1981) (§ 17a(8)); *In re Ross,* 602 F.2d 604, 607–08 (3d Cir.1979) (§ 17a(2)). The Sixth Circuit has noted that "most bankruptcy

courts" adhere to this latter position and apply collateral estoppel. *Spilman, supra,* 656 F.2d at 227.

chargeable in bankruptcy. We intimate no view as to the correctness of the state court's contrary conclusion under Oklahoma law because the res judicata or collateral estoppel "consequences of a final, unappealed judgment on the merits [are not] altered by the fact that the judgment may have been wrong." *Federated Department Stores v. Moitie,* 452 U.S. 394, 398, 101 S.Ct. 2424, 2428, 69 L.Ed.2d 103 (1981). This result does not work a hardship on the defendant. He had an opportunity to present his case on dischargeability under § 17a(7) to the state court, which, pursuant to the 1970 congressional amendments to the bankruptcy laws, had jurisdiction to decide this issue. Moreover, defendant had a right to appeal in the Oklahoma courts;[11] collateral estoppel merely bars him from relitigating the dischargeability issue in federal court.

Accordingly we conclude that the judgment should be reversed.

---

**11.** The Oklahoma Supreme Court has jurisdiction to review judgments of the State district courts. Okla. Const. art. 7, § 4; Okla.Stat. Ann. tit. 12, § 952 (West Supp.1982). If the Oklahoma Supreme Court refers a case to the Oklahoma Court of Appeals, the Supreme Court may review the decision of the Court of Appeals by granting a writ of certiorari. Okla. Stat.Ann. tit. 20, § 30.1 (West Supp.1982).