**In re Jack Cartlich TWAY, Debtor.**

**Betty Gene TWAY, Plaintiff,**

v.

**Jack Cartlich TWAY, Defendant.**

**Bankruptcy No. BK–92–18378–BH.**
**Adv. No. 93–1135.**

United States Bankruptcy Court,
W.D. Oklahoma.

Dec. 2, 1993.

G. Patrick Garrett, of Stephen A. Sherman & Associates, Oklahoma City, OK, for plaintiff.

Lesli A. Bailey, of McClelland, Collins, Bailey, Bailey & Bellingham, Oklahoma City, OK, for debtor/defendant.

RICHARD L. BOHANON, Chief Judge.

## I

### *ANATOMY OF THE LITIGATION.*

Plaintiff's complaint seeks to except her debt from debtor-defendant's discharge. It arises from a consent judgment entered in her favor and against defendant in the United States District Court. Summary judgment is requested to grant collateral estoppel effect to the consent judgment thereby declaring it nondischargeable.

In 1979 the parties, who are brother and sister, agreed to be general partners of Tway Contracting Company, a highway construction firm. All profits and losses were to be divided 55% to Jack Tway and 45% to Betty Tway. In 1988 Betty Tway filed a complaint against her brother in district court alleging he had fraudulently transferred funds from their partnership for his own use. The complaint alleged that his acts constituted a will-

ful and negligent breach of fiduciary duty owed to Betty Tway.

Another entity, R.R. Tway, Inc., is a corporation with Jack Tway as its majority shareholder, officer, and director and Betty Tway is a minority shareholder. The district court complaint also alleged that Jack Tway transferred funds of this corporation to his own use constituting a willful and negligent breach of fiduciary duties owed to Betty Tway.

Jack Tway made an affidavit which was entered in the district court case. In it he agrees that judgment may be entered against him in the amount of $810,000 with the specific recognition that the judgment "may not be dischargeable under the bankruptcy laws of the United States." The affidavit acknowledges that he had advice of counsel and understood the consequences of the judgment.

In this motion, plaintiff contends that the district court judgment should be granted preclusive effect and summary judgment be entered in this proceeding.

## II

### THE ISSUE PRECLUSIVE EFFECT OF A CONSENT JUDGMENT PREVIOUSLY ENTERED IN THE UNITED STATES DISTRICT COURT.

 Issue preclusion or collateral estoppel is a doctrine which states that where an issue of fact or law is litigated and established by a valid and final judgment, that issue cannot be relitigated between the parties even though it arises in an action based upon a different claim. One of the most authoritative statements on the distinction between claim and issue preclusion is:

The general principle announced in numerous cases is that a right, question, or fact distinctly put in issue and directly determined by a court of competent jurisdiction,

as a ground of recovery, cannot be disputed in a subsequent suit between the same parties or their privies; and, even if the second suit is for a different cause of action, the right, question, or fact once so determined must, as between the same parties or their privies, be taken as conclusively established, so long as the judgment in the first suit remains unmodified. This general rule is demanded by the very object for which civil courts have been established, which is to secure the peace and repose of society by the settlement of matters capable of judicial determination. Its enforcement is essential to the maintenance of social order; for the aid of judicial tribunals would not be invoked for the vindication of rights of person and property, if, as between parties and their privies, conclusiveness did not attend the judgments of such tribunals in respect of all matters properly put in issue and actually determined by them.[1]

In other words, the judgment in the first case is conclusive in the second case between the same parties as to matters actually litigated and determined in the first action.[2] The *Restatement (Second) of Judgments* uses more contemporary terminology in discussing issue preclusion:

When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to that judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or different claim.[3]

Issue preclusion serves the policies of finalizing resolution of disputes, conserving scarce judicial and litigant resources, encouraging reliance on final decisions, and promoting comity between state and federal courts.

It must be noted that the Supreme Court has handed down a significant number of decisions regarding issue preclusion.[4] Under the former Bankruptcy Act, the Court held that a bankruptcy court should grant preclu-

1. *Southern Pacific Railroad Co. v. United States,* 168 U.S. 1, 48–9, 18 S.Ct. 18, 27–8, 42 L.Ed. 355 (1897).

2. Austin Wakeman Scott, *Collateral Estoppel by Judgment,* 56 Harv.L.Rev. 1 (1942).

3. *Restatement (Second) of Judgments* § 27 (1982).

4. *United States v. Mendoza,* 464 U.S. 154, 104 S.Ct. 568, 78 L.Ed.2d 379 (1984) (Once a court

has decided an issue of fact or law necessary to its judgment, that decision is conclusive in a subsequent suit on a different cause of action involving a party to the prior litigation.); *United States v. Stauffer Chemical Co.,* 464 U.S. 165, 104 S.Ct. 575, 78 L.Ed.2d 388 (1984) (Issue preclusion applies to preclude relitigation of both issues of fact and law if those issues were conclu-

sive effect to issues decided in a prior decision.[5] In *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979), the Court refused to grant *res judicata* effect to a previous state court proceeding on the issue of dischargeability under the Bankruptcy Act. However, the Court also addressed issue preclusion in a footnote by stating,

> If, in the course of adjudicating a state-law question, a state court should determine factual issues using standards identical to those of § 17, then collateral estoppel, in the absence of countervailing statutory policy, would bar relitigation of those issues in the bankruptcy court.[6]

Subsequently, the Supreme Court gave issue preclusive effect to bankruptcy court proceedings under the Code. The Court found that the principles of issue preclusion would obviate the need for the bankruptcy court to reexamine factual questions or interpret state law.[7] It was not until later that the Supreme Court held that the general rule of issue preclusion was specifically made applicable to dischargeability actions under the Bankruptcy Code by *Grogan v. Garner*.[8]

*Grogan* teaches that the doctrine of collateral estoppel applies to § 523(a) actions. Various Courts of Appeals have also granted issue preclusion to prior federal and state court judgments in dischargeability proceedings.[9] Although the bankruptcy court in a dischargeability action under § 523(a) ultimately determines whether or not a debt is dischargeable, issue preclusion may be invoked to bar relitigation of the factual issues underlying the determination of dischargeability.[10]

Because this complaint involves a consent judgment entered in the United States District Court, another federal court is to apply federal principles of issue preclusion in considering the effect of the prior judgment.[11] Therefore, *Wallace* and *Tsamasfyros* are most instructive. In these cases, the Court of Appeals held that factual issues of elements of § 523(a) cannot be relitigated if: (1) the issue to be precluded is the same as

sively determined in a prior action involving the same parties. Doctrine's purpose is to protect litigants from burdensome relitigation and of promoting judicial economy.); *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 480–1, 102 S.Ct. 1883, 1896–8, 72 L.Ed.2d 262 (1982) (Issue preclusion does not apply when the party against whom an earlier decision is asserted did not have a full and fair opportunity to litigate the claim or issue. Federal courts must look to the common law or to the policies supporting res judicata and issue preclusion in assessing the preclusive effect of decisions of all other federal courts.); *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980); *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979); *Gibson v. Berryhill*, 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973); *United States v. Utah Construction & Mining Co.*, 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966).

5. *Heiser v. Woodruff*, 327 U.S. 726, 736, 66 S.Ct. 853, 857–8, 90 L.Ed. 970 (1946).

6. *Brown v. Felsen*, 442 U.S. 127, 139 note 10, 99 S.Ct. 2205, 2213 note 10, 60 L.Ed.2d 767 (1979). Since *Brown*, the doctrine of issue preclusion was recognized in circuit court cases regarding the bankruptcy court's determination of dischargeability of debts. See, *Harold V. Simpson Co. v. Shuler (In re Shuler)*, 722 F.2d 1253, 1255 (5th Cir.), *cert. denied*, 469 U.S. 817, 105 S.Ct. 85, 83 L.Ed.2d 32 (1984); *Spilman v. Harley*, 656 F.2d 224, 227 (6th Cir.1981); *In re Lombard*, 739 F.2d 499, 502 (10th Cir.1984); *Goss v. Goss*, 722 F.2d 599, 604 (10th Cir.1983).

7. *Kelly v. Robinson*, 479 U.S. 36, 48 note 8, 107 S.Ct. 353, 360 note 8, 93 L.Ed.2d 216 (1986).

8. *See, Grogan v. Garner*, 498 U.S. 279, 284 note 11, 111 S.Ct. 654, 658 note 11, 112 L.Ed.2d 755 (1991), where the Supreme Court held:
 Our prior cases have suggested, but not formally held, that the principles of collateral estoppel apply in bankruptcy proceedings under the current Bankruptcy Act ... We now clarify that collateral estoppel principles do indeed apply in discharge exception proceedings pursuant to § 523(a).

9. See, *Shuler, supra* note 6; *Spilman, supra* note 6; *Klingman v. Levinson*, 831 F.2d 1292 (7th Cir.1987); *Frank v. Daley (In re Daley)*, 776 F.2d 834 (9th Cir.1985) cert. denied, *Daley v. Frank*, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986); *Klemens v. Wallace (In re Wallace)*, 840 F.2d 762 (10th Cir.1988); *Nelson v. Tsamasfyros (In re Tsamasfyros)*, 940 F.2d 605 (10th Cir. 1991); *Halpern v. First Georgia Bank (In re Halpern)*, 810 F.2d 1061 (11th Cir.1987).

10. *Wallace, supra* note 9, at 764.

11. *Johnson v. United States*, 576 F.2d 606, 613 (5th Cir.1978), cert. denied *Johnson v. United States*, 451 U.S. 1018, 101 S.Ct. 3007, 69 L.Ed.2d 389 (1981). The effect that federal courts give to the judgments of other federal courts is an integral part of the independent federal system of which the Supreme Court spoke in *Byrd v. Blue Ridge Rural Electric Cooperative*, 356 U.S. 525, 537, 78 S.Ct. 893, 900, 2 L.Ed.2d 953 (1958). Here we are concerned only with a federal dis-

that involved in the prior action; (2) the issue was actually litigated by the parties in the prior action; and (3) the other court's determination of the issue was necessary to the resulting final and valid judgment.[12]

■ Consent judgments have been found to have preclusive effect in bankruptcy proceedings.[13] However, the standard as set out in *Wallace* must be examined. In this case, the issues sought to be precluded from relitigation concern whether or not a fiduciary relationship existed and whether fraud or defalcation occurred pursuant to § 523(a)(4) of the Code. To be precluded, those issues must have been established by a preponderance of the evidence.[14]

■ The first step is to determine whether the issue which the plaintiff seeks to have precluded is the same as that involved in the prior action. The plaintiff must establish that the elements necessary to support the finding of a fiduciary relationship in the consent judgment are identical to those necessary to support an exception to the discharge under § 523(a)(4).

## III

### *A FIDUCIARY RELATIONSHIP PURSUANT TO § 523(a)(4) MUST BE ESTABLISHED BY A TECHNICAL OR EXPRESS TRUST.*

The meaning of "fiduciary" for dischargeability purposes under § 523(a)(4) is defined

under federal law and has been fixed by judicial construction since 1844.[15] In *Chapman* the Supreme Court distinguished between the types of trusts by stating:

> The cases enumerated, the "defalcation of a public officer," "executor," "administrator," "guardian," or "trustee," are not cases of implied but special trusts, and the "other fiduciary capacity" mentioned, must mean the same class of trusts. The act speaks of technical trusts, and not those which the law implies from the contract.[16]

The Supreme Court has consistently applied this standard for almost 150 years.[17] The Court explained in *Davis v. Aetna Acceptance Co.* that:

> It is not enough that by the very act of wrongdoing out of which the contested debt arose, the bankrupt has become chargeable as a trustee *ex maleficio*. He must have been a trustee before the wrong and without reference thereto. In the words of Blatchford, J., "The language would seem to apply only to a debt created by a person who was already a fiduciary when the debt was created." *Upshur v. Briscoe*, 138 U.S. 365, 378, 11 S.Ct. 313, 317, 34 L.Ed. 931 (1891).[18]

trict court determination; therefore, federal issue preclusion rules will be used.

12. *Wallace, supra* note 9 at 765; and *Tsamasfyros, supra* note 9 at 605.

13. See *Klingman, supra* note 9. (Where a state court determines factual questions using the same standard as bankruptcy court would use in determining whether a debt is dischargeable, collateral estoppel should be applied to promote judicial economy. A consent decree satisfied the "actual litigation" requirement of collateral estoppel doctrine.); *Daley, supra* note 9. (Doctrine of collateral estoppel did not bar creditors from relitigating issue of nondischargeability of debt under § 523(a), where dismissal with prejudice was entered pursuant to stipulation and fraud claim was never litigated.); and *Halpern, supra* note 9. (Issue preclusion, based on state court consent judgment, was properly utilized by bankruptcy court as evidence of nondischargeability of Chapter 7 debtor.)

14. *Grogan, supra* note 8.

15. *Chapman v. Forsyth*, 43 U.S. 189, 195, 2 How. 202, 208, 11 L.Ed. 236 (1844).

16. *Chapman, supra* note 15, 43 U.S. at 208, 2 How. 202.

17. *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 333, 55 S.Ct. 151, 153, 79 L.Ed. 393 (1934); *Neal v. Clark*, 95 U.S. (5 Otto) 704, 24 L.Ed. 586 (1877); *Hennequin v. Clews*, 111 U.S. 676, 682, 4 S.Ct. 576, 579, 28 L.Ed. 565 (1884); *Palmer v. Hussey*, 119 U.S. 96, 7 S.Ct. 158, 30 L.Ed. 362 (1886); *Noble v. Hammond*, 129 U.S. 65, 68, 9 S.Ct. 235, 236, 32 L.Ed. 621 (1889); *Upshur v. Briscoe*, 138 U.S. 365, 11 S.Ct. 313, 34 L.Ed. 931 (1891); *Crawford v. Burke*, 195 U.S. 176, 193, 25 S.Ct. 9, 13, 49 L.Ed. 147 (1901); *Tindle v. Birkett*, 205 U.S. 183, 27 S.Ct. 493, 51 L.Ed. 762 (1907).

18. *Davis, supra* note 17, 293 U.S. at 333, 55 S.Ct. at 153.

In accord, the Court of Appeals for this circuit recognizes the measure for the term fiduciary by stating in *In re Romero* [19], that it applies only to:

[T]echnical trusts and not those which the law implies from a contract. See *Remington on Bankruptcy* § 3364 and cases cited. Further, the fiduciary relationship must be shown to exist prior to the creation of the debt in controversy. *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934).[20]

▮▮▮ Thus, for purposes of § 523(a)(4), the term fiduciary capacity has been limited to technical or express trusts and does not extend to trusts *ex maleficio* or those that may be imposed because of the very act of wrongdoing out of which the contested debt arose.[21] While the term fiduciary for dischargeability purposes is defined under federal law, state statutes remain an important factor in determining whether a trust relationship exists as being imposed by law rather than implied in law.[22]

The legal issue to be determined here is whether the defendant was a trustee in that strict and narrow sense? If so, in order to preclude relitigation of this issue here, it must be established that in entering the consent judgment the same analysis was employed.

The fiduciary analysis pursuant to § 523(a)(4) is twofold. First, is there an express trust? Second, did it arise prior to the wrongful act? Here the applicable facts do not meet either inquiry because there is no express trust and any fiduciary obligation arose only at the time the wrongful act was perpetrated.

▮▮▮ To find an express trust there must be a written document or technical trust instrument which expressly states that one is to hold specific property as trustee for the other.[23] The court must search the documents to determine whether an express trust relationship was established.[24] Here we obviously have a partnership agreement and a certificate of incorporation. Neither of these documents have been made part of the record, and thus there is no evidence to support a finding that there is an express trust agreement.

▮▮▮ This court can also examine state law to determine if a trust arose out of a statute.[25] To show a fiduciary capacity arising from a statutorily imposed trust for the purposes of § 523(a)(4), a creditor must point to an express legislative design to create a trust relationship.[26] For a state statute to create an express or technical trust for nondischargeability purposes, the statute must define the trust res, establish trustee duties, and impose the trust prior to any wrongdoing creating the obligation.[27] In *Woodworking*, it was found that Arizona's Construction Trust Fund Statute created a fiduciary relationship for purposes of § 523(a)(4). That statute expressly prohibited the use of trust funds for any purpose other than to satisfy the claims for beneficiaries. Another exam-

**19.** *Allen v. Romero (In re Romero)*, 535 F.2d 618 (10th Cir.1976).

**20.** *Romero, supra* note 19, at 621.

**21.** Lawrence P. King, *Collier on Bankruptcy*, para. 523.14[c] (15th ed. 1993).

**22.** See *Romero, supra* note 19, at 622 and *Driggs v. Black (In re Black)*, 787 F.2d 503, 506–7 (10th Cir.1986).

**23.** Express trust is defined as:

A trust created or declared in express terms, and usually in writing, as distinguished from one inferred by the law from the conduct or dealings of the parties ... Trusts which are created by the direct and positive acts of the parties, by some written, or deed, or will, or by words expressly or impliedly evincing an intention to create a trust.

*Black's Law Dictionary* 1354 (5th ed. 1979).

**24.** *Davis, supra* note 17, 293 U.S. at 334, 55 S.Ct. at 154.

**25.** *Romero, supra* note 19, at 621; and *Black, supra* note 22, at 506.

**26.** *Pacific–Midwest Gas Co. v. Hutton (In re Hutton)*, 117 B.R. 1009, 1013 (Bankr.N.D.Okl.1990); *Security Title & Guaranty Co. v. Campbell (Matter of Campbell)*, 79 B.R. 496, 498 (Bankr.M.D.Fla. 1986); *Commonwealth of Virginia v. Myers (In re Myers)*, 52 B.R. 901, 905 (Bankr.E.D.Va.1985).

**27.** *Woodworking Enterprises, Inc., v. Baird (In re Baird)*, 114 B.R. 198 (9th Cir. BAP 1990); *Griffiths v. Peterson (In re Peterson)*, 96 B.R. 314, 321–22 (Bankr.D.Colo.1988); and *Runnion v. Pedrazzini (In re Pedrazzini)*, 644 F.2d 756 (9th Cir.1981).

ple of an express trust arising out of a statute is found in *Carey Lumber Co. v. Bell*.[28] There the Court of Appeals for the Fifth Circuit interpreted Oklahoma's lien trust statutes. It held that the statutes expressly and clearly impose an express trust upon construction mortgagors. The statute defines the trust res and charges the trustee with affirmative duties in applying trust funds. While the trust was established by statute without an agreement between the parties, the court found that an express trust was created by Oklahoma's statute that imposed an express fiduciary duty on the mortgagor.[29] In *In re Nicholas*[30], the Court of Appeals for the Fifth Circuit concluded that the Texas Construction Trust Fund Statute creates fiduciary duties encompassed by § 523(a)(4) but the plaintiff failed to establish that the debtor violated the fiduciary duty under the statute. In *In re Boyle*[31] the court held that the Texas Trust Code's imposition of fiduciary duties on trustees did not apply to statutory construction trust funds where the contractor is under no obligation to segregate funds or to apply the proceeds from each specific job only to the expenses of that job. Another statutory trust example has been found in *Romero*,[32] where the court held that New Mexico's statutory scheme of licensing those contractors engaged in the construction industry imposed a fiduciary duty on the debtor-contractor who had been advanced money under a construction contract. *In re Currin*[33] followed *Romero* and concluded that Colorado's real estate broker's licensing statute imposed a fiduciary

duty on the debtor so as to preclude a discharge under § 523(a)(4). In *Hamby v. St. Paul Mercury Indemnity Co.*[34], it was found that under Virginia statutory law a real estate agent owes a fiduciary relationship to his client. Under California statutory and case law, the Court of Appeals for the Ninth Circuit determined that partners are fiduciaries under § 523(a)(4) and the partnership debt was nondischargeable.[35] An identical holding was used in *In re Short*[36] where a debtor involved in a joint venture had a fiduciary duty under Washington statutes to act as a trustee for the affairs of the joint venture. In *In re Johnson*[37] the Michigan Building Contract Fund Act was held to satisfy the express or technical trust requirement where the debt was created by a breach of duties imposed by the statute creating a duty on the contractor receiving payments for the benefit of another.

Other courts have found that certain statutes do not satisfy the strict fiduciary requirements under § 523(a)(4). An Oregon law imposing trust duties on an employer was insufficient to establish a fiduciary relationship in bankruptcy.[38] Further, a Nebraska statute rendering it unlawful for one receiving money under a construction contract to fail to apply it to the claims of laborers was held to be insufficient to create a trust.[39]

Regarding federal statutes, it has been held that the Commodity Exchange Act[40] creates an express or technical trust in favor of the commodities purchaser and that the debt owed by the broker-dealer was non-

28. *Carey Lumber Co. v. Bell*, 615 F.2d 370, 374 (5th Cir.1980).

29. *Carey Lumber Co.*, *supra* note 28, at 374.

30. *Coburn Company of Beaumont v. Nicholas (In re Nicholas)*, 956 F.2d 110 (5th Cir.1992).

31. *Boyle v. Abilene Lumber Co. (In re Boyle)*, 819 F.2d 583 (5th Cir.1987).

32. *Romero*, *supra* note 19, at 622.

33. *Anderson v. Currin (In re Currin)*, 55 B.R. 928, 932–33 (Bankr.D.Colo.1985).

34. *Hamby v. St. Paul Mercury Indemnity Co.*, 217 F.2d 78 (4th Cir.1954).

35. *Ragsdale v. Haller*, 780 F.2d 794, 796 (9th Cir.1986).

36. *Lewis v. Short (In re Short)*, 818 F.2d 693 (9th Cir.1987).

37. *Carlisle Cashway, Inc. v. Johnson (In re Johnson)*, 691 F.2d 249 (6th Cir.1982).

38. *Schlecht v. Thorton (In re Thorton)*, 544 F.2d 1005, 1007 (9th Cir.1976).

39. *Devaney v. Dloogoff (In re Dloogoff)*, 600 F.2d 166, 169–70 (8th Cir.1979).

40. 7 U.S.C. §§ 1–26.

dischargeable.[41] Similarly, the Investment Advisors Act of 1940 [42] were held to establish a trust relationship for the purposes of § 523(a)(4).[43] Further, statutory exceptions to discharge are to be narrowly construed in order to effectuate the congressional policy of providing debtors a fresh start.[44] And although the court may consider state law, the ultimate resolution of whether a corporate officer or partner is a fiduciary pursuant to § 523(a)(4) is a matter of federal law.[45]

Again, for a statute to create an express or technical trust for nondischargeability purposes, the statute must define the trust res, establish trustee duties, and impose a trust prior to wrongdoing creating the debt. Here we are concerned with two statutory schemes. First, the Oklahoma General Corporation Act [46] does not impose any express statutory fiduciary duties on directors of a corporation.[47] Secondly, the Oklahoma Uniform Partnership Act [48] only provides that a partner is accountable as a fiduciary to the partnership and not to the individual partners.[49] Therefore, there is no express or technical trust for the benefit of the plaintiff.

The second requirement is that the trust must arise prior to the misappropriation of the funds and not as a result of that misappropriation. If any fiduciary duties had been imposed, they arise as a result of the wrongdoing. Therefore, if a trust was created it was an implied trust or a trust *ex maleficio* which are not within the application of § 523(a)(4). In fact the gist of Betty Tway's argument is that the trust arose upon misappropriation of the funds and not earlier. This argument in and of itself defeats her contention that it was a technical or express trust. The trust could only be *ex maleficio*. This is precisely the type of trust which

*Davis* [50] and its progeny say cannot form the grounds for nondischargeability.

Thus, the first step in *Wallace* [51] is not met because the issue which the plaintiff seeks to have precluded is not the same as that involved in the prior action. Due to jurisprudence extant since 1844 a § 523(a)(4) complaint must establish that there is an express or technical trust which existed prior to the wrongdoing. One does not exist on the facts presented here.

Based on the foregoing the elements of issue preclusion are not satisfied.

Accordingly, it is ordered that plaintiff's motion for summary judgment is denied.

---

**41.** *Prudential–Bache Securities, Inc. v. Sawyer (In re Sawyer),* 112 B.R. 386 (D.Colo.1990). See also *Smith v. M & M Commodities, Inc. (In re Smith),* 72 B.R. 61 (N.D.Iowa 1987).

**42.** 15 U.S.C. §§ 80b–1 to –21.

**43.** *Griffiths v. Peterson (In re Peterson),* 96 B.R. 314, 321–22 (Bankr.D.Colo.1988).

**44.** *First National Bank of Red Bud v. Kimzey (In re Kimzey),* 761 F.2d 421, 424 (7th Cir.1985); *Gregg v. Rahm (In re Rahm),* 641 F.2d 755, 756–57 (9th Cir.), cert. denied sub. nom. *Gregg v. Rahm,* 454 U.S. 860, 102 S.Ct. 313, 70 L.Ed.2d 157 (1981).

**45.** *Black, supra* note 22, at 506; *Matter of Angelle,* 610 F.2d 1335 (5th Cir.1980).

**46.** 18 O.S. § 1001 et seq. (1992).

**47.** It is noted that *San Saba Pecan, Inc. v. Failing (In re Failing),* 124 B.R. 340 (W.D.Okl.1989) held that the exception to discharge set forth in 11 U.S.C. § 523(a)(4) applies to corporate officers who directly participate in fraud or defalcation. However, *Failing* did not consider the limitations of *Davis, supra* note 17, *In re Romero, supra* note 19, or *In re Black supra* note 22.

**48.** 54 O.S. § 201 et seq. (1991).

**49.** 54 O.S. § 221 (1991).

**50.** *Davis, supra* note 17.

**51.** *Wallace, supra* note 9.