429 So.2d 40 (1983)
CITY OF MIRAMAR, Appellant,
v.
Susan BAIN, Appellee.
No. 80-1917.
District Court of Appeal of Florida, Fourth District.
March 16, 1983.
Rehearing Denied April 22, 1983.
*41 Edward Paul Kreiling, Miramar, for appellant.
Alan E. Dubow of Ellis Rubin Law Offices, P.A., Miami, for appellee.
PER CURIAM.
Appellee owns and resides in a home in the City of Miramar. Two cougars (or mountain lions), which appellee uses to promote a suntan lotion, occupy the garage. Appellee has possession of the animals by a permit issued annually by the Florida Game and Fresh Water Fish Commission (The Commission) pursuant to Section 372.922, Florida Statutes (1979).
On November 4, 1977, the Commission inspected appellee's premises and approved the continuation of a permit which authorized appellee to house the cougars at her residence. At that time and until late 1978, appellee kept the cougars in her garage and a fenced area in the rear of her property. The rear fence complied with appellant's zoning regulations and met the Commission's requirements. In 1979, appellee sought a variance from a Miramar ordinance which prohibited any type of fence in the front yard of a home located in a single family zoning district. She asserted the need for enclosing her entire property because children were allegedly disturbing the cougars by coming to two garage windows on the front of her home and to the garage door on the south side of the building. The city commission disapproved appellee's application. The City sought the attorney general's opinion upon the question of whether they could require the animals' removal but did not seek an opinion relevant to the issues before this Court. In December of 1979, without seeking review by certiorari in the circuit court of the City's adverse decision on her zoning variance application, appellee personally constructed the stockade fence. The expanded stockade area enclosed the entire front yard which included the area immediately adjacent to the windows located on the south side of her garage, but did not enclose the area immediately adjacent to the door to her garage. Expectedly, the City charged appellee in the County Court of Broward County with violation of the City's ordinance by constructing the fence without a variance. She defended on the ground that the Constitution of Florida, the applicable statute, and the regulations of the Commission preempted the regulation of wildlife, rendering the City ordinance she had allegedly violated invalid as applied. The City, contending wildlife regulation had nothing to do with the case, argued it had a valid ordinance which appellee violated. The county judge, at the end of the non-jury trial, recited that the State did not control or regulate a zoning matter such as fences and found appellee guilty. Appellee *42 did not appeal the judgment to the circuit court.
A month and a half later, in April of 1980, appellant filed a complaint seeking an injunction to require removal of the fence. It alleged that although appellee's application for variance had been denied, she erected the fence without a permit and violated the City's ordinance. Appellee's affirmative defenses included the allegations that the city lacked jurisdiction to require removal of the fence because the Commission had exclusive jurisdiction of the matter and it had approved the fence. In its reply, appellant alleged that estoppel by judgment barred the issues raised because they had been litigated in a criminal case, wherein appellee had been found guilty. Nevertheless, the trial court entered judgment for appellee based upon the following findings:
1. The Court has jurisdiction of the parties and subject matter.
2. Article IV, Sec. 9, State Constitution, vests in the Florida Game and Fresh Water Fish Commission the exclusive authority to exercise all of the State's regulatory power over all wild animal life.
3. The Florida Game and Fresh Water Fish Commission has, by regulation 16E-5.051, defined a Cougar as a Class II, wildlife animal.
4. A Class II wildlife animal may be possessed as a pet, if a permit is first obtained to do so, as required by Florida Statutes 372.922.
5. The Defendant, by stipulation of the parties, has obtained and holds a valid permit, to own and keep the cougars which are now in her possession in the City of Miramar, Florida.
6. The Florida Game and Fresh Water Fish Commission has, by regulation 16E-5.052, provided that Class II animals shall be caged in accordance with the following requirement:
(3) A perimeter fence of sufficient height and strength to deter entry by the general public must be present around the cage or curtilage of any premises wherein Class I or Class II animals are housed or exercised outdoors.
7. Upon the facts and the law applicable hereto, the City of Miramar does not have the power, by ordinance, to prevent the Defendant from doing that act which the Florida Game and Fresh Water Fish Commission, by its regulations, require that the Defendant do.
The City raises three arguments on appeal: (1) The City's fence ordinance should have governed the disposition of the case; (2) appellee is estopped to contest the validity of the fence ordinance because she admitted its validity by applying for a variance; and (3) the judgment and adjudication of the county court in the criminal case should have estopped appellee from litigating this cause.
Appellee offered no evidence that the Commission required the expansion of the fence at any time prior to its construction. Rather, the Commission approved appellee's compound and although the testimony shows the Commission's wildlife officer's ex post facto approval of the expanded compound, the record is conspicuously silent as to any assertion of authority by the Commission which would constitute a conflict between the supremacy of the Commission's regulatory powers and the zoning ordinances of the City of Miramar.
Article IV, Section 9 of the Florida Constitution provides for the formation of the Florida Game and Fresh Water Fish Commission. We recognize that the Commission has exclusive authority to enact rules and regulations governing wildlife such as those that are the subject of this appeal. Its rules and regulations are codified in Chapter 39-6 of the Florida Administrative Code. A legislative enactment or municipal ordinance as we have here, if in conflict with the regulations of the Commission must give way to the Constitutional mandate establishing the Commission. See Whitehead v. Rogers, 223 So.2d 330 (Fla. 1969). Rule 39-6.03(1)(c) provides:
(1) Class I and II animals shall be caged in accordance with the following requirements:

*43 ... .
(c) A perimeter fence of sufficient height and strength to deter entry by the general public must be present around the cage or curtilage of any premises wherein Class I or Class II animals are housed or exercised outdoors. [Emphasis added.]
The foregoing regulation obviously provides that Class I or Class II animals may be alternatively housed by either providing for a fence around the cage or around the curtilage of the premises where any such animals are housed. Appellee had satisfied this regulation by fencing the rear portion of her yard and providing for the animals to be housed in the garage area and the back yard of her residence. We are confident that the Commission would not issue a permit to keep a Class I or Class II wild animal in an area which would require violation of an existing zoning code. This observation is supported by the fact that when appellee initially made application for a permit to house the cougars at her residence, the fenced area met all applicable zoning regulations and no conflict existed between the Commission and the City of Miramar.
Before issuance of a permit the Commission regulations require a showing by the applicant that he or she is able to provide suitable caging facilities and able to maintain the personal pets in an appropriate neighborhood.
(5) Permit requirements for possession of personal pets are as follows:
(c) That they are able to provide satisfactory caging facilities as required in the minimum pen specifications, 39-6.03, F.A.C., within thirty (30) days of notification of tentative approval for a permit.
(d) That they are able to maintain the personal pet(s) in an appropriate neighborhood.
Fla. Admin. Code Rule 39-6.02(5)(c) and (d).
We construe Rule 39-6.02(5)(c) to mean that prior to issuance of a permit, applicants must demonstrate to the Commission that they can provide satisfactory caging facilities without violation of existing city or county building and zoning regulations. This construction provides for harmonious blending of the Commission's permit requirements and city and county building and zoning regulations. It also insures that wildlife will only be maintained in appropriate neighborhoods.
The fact that the Commission did not disapprove of appellee's fencing of her entire front yard does not elevate their approval of the fence to the status of a requirement. Appellee met the requirements of the Commission with the existing back yard fence and she offered no evidence showing that the construction of the front yard fence resulted from a requirement of the Commission.
We therefore conclude that no conflict exists between the regulations of the Commission and the ordinance of the City of Miramar which prohibits fencing of front yards in a single family residential area. Because of this conclusion we need not reach appellant's second and third points on appeal. Accordingly, we reverse and remand this matter to the trial court with directions to enter judgment in favor of the appellant.
REVERSED and REMANDED.
HURLEY and DELL, JJ., concur.
GLICKSTEIN, J., dissents with opinion.
GLICKSTEIN, Judge, dissenting.
I respectfully dissent. As the majority points out, the city raises three arguments on appeal: 1) the city's fence ordinance should have governed the disposition of the case; 2) appellee is estopped to contest the validity of the fence ordinance because she admitted its validity by applying for a variance; and 3) the judgment and adjudication of the county court in the criminal case should have estopped appellee from litigating this cause.
I believe that the city's first argument fails for the constitutional reasons recited in the final judgment. Article IV, section 9, of the Florida Constitution provides:
SECTION 9. Game and fresh water fish commission.  There shall be a game *44 and fresh water fish commission, composed of five members appointed by the governor subject to confirmation by the senate for staggered terms of five years. The commission shall exercise the regulatory and executive powers of the state with respect to wild animal life and fresh water aquatic life, except that all license fees for taking wild animal life and fresh water aquatic life and penalties for violating regulations of the commission shall be prescribed by specific statute. The legislature may enact laws in aid of the commission, not inconsistent with this section. The commission's exercise of executive powers in the area of planning, budgeting, personnel management, and purchasing shall be as provided by law. Revenue derived from such license fees shall be appropriated to the commission by the legislature for the purpose of management, protection and conservation of wild animal life and fresh water aquatic life.
(Emphasis supplied.)
The supremacy of the commission's regulatory authority was confirmed by the supreme court in Whitehead v. Rogers, 223 So.2d 330 (Fla. 1969).[1] Therein the appellee, who held a valid hunting license pursuant to a commission order, had been charged with violating a Florida statute regulating the use of firearms on Sundays. The supreme court affirmed the decision of the circuit court holding the statute null and void because it was inconsistent with the provisions of the commission's order providing for open season on mourning doves between October 5 and November 3, inclusive. At the time, the Constitution of 1885 was in effect and it contained in article IV the antecedent to the provisions that presently exist.
I see no difference in the Whitehead situation and the present one. The commission has enacted rules governing wildlife as personal pets which are codified in chapter 39-6 of the Florida Administrative Code. Rule 39-6.03(1)(c)[2] provides:
(1) Class I and Class II animals shall be caged in accordance with the following requirements:
... .
(c) A perimeter fence of sufficient height and strength to deter entry by the general public must be present around the cage or curtilage of any premises wherein Class I or Class II animals are housed or exercised outdoors.
In this case the stockade fence is around the curtilage;[3] and the record shows a commission employee had opined that the animals would be kept more safely if appellee were to erect a fence along the front yard property line. His testimony was contained in the transcript of the county court criminal proceedings which was introduced into evidence by stipulation.
Surely if the commission's rules are supreme vis-a-vis any conflicting state legislation as confirmed in Whitehead, a municipal ordinance is similarly subjugated. Municipal powers legislatively derived from chapter 166, Florida Statutes (1981), are as susceptible to constitutional limitations as any other statutory provision. Thus, to me it does not seem constitutionally permissible to give the commission exclusive authority to permit wild animals in residential neighborhoods, but then subject its authority to zoning ordinances which affect what safety devices  such as fences  should be required to protect the public and the animals. The construction adopted by the majority (which correctly finds that the commission did not require the fence around the front yard), in fact, would prevent the commission from issuing an annual permit to appellee if it required a fence around the front yard which was prohibited by the city's zoning ordinance.
*45 Turning to the second argument, I note the city failed to present it to the trial court; and even if it had been raised, I find it to be meritless. Appellant's third argument[4] was the subject of this court's decision in Nell v. International Union of Operating Engineers, Local # 675, 427 So.2d 798 (Fla. 4th DCA 1983), and does not stand because of the reasons recited therein.
NOTES
[1] See also Beck v. Game & Fresh Water Fish Comm'n, 160 Fla. 1, 33 So.2d 594 (1948); and State ex rel. Griffin v. Sullivan, 158 Fla. 870, 30 So.2d 919 (1947).
[2] At trial and in the final judgment, the rules which preexisted chapter 39-6 were identified. Only the numbers have been changed, however, not the relevant text.
[3] See Joyner v. State, 303 So.2d 60 (Fla. 1st DCA 1974).
[4] It should be noted that though appellant raised the issue of estoppel by judgment on appeal, during the trial of this case it apparently failed to proffer the actual county court judgment (it is not in the record); and appellee ignored the issue of estoppel by judgment in her brief.