WENTWORTH, Senior Judge.
This is an appeal by the Mangrove Chapter of Izaak Walton League of America, Inc. and Friends of the Everglades, Inc. from the Game and Fresh Water Fish Commission’s (GFC) final order permitting ap-pellees Driscoll Properties, Inc. and Dris-coll Foundation, Inc. [the intervenors below] to destroy nests and habitat of certain endangered rodent species incidental to developing portions of the subdivision Harbor Course South. The appellants raise issues as to (1) GFC’s failure to enact proper rules, (2) the improper delegation to Monroe County of habitat regulation, (3) lack of an evidentiary predicate for permitting, (4) improper rejection of a hearing officer’s language with respect to the need for pet control through an enforceable covenant, and (5) the GFC’s alleged substitution of a federal standard for the state standard in permit issuance. We affirm on all issues except issue 4, as to which we reverse and remand because of the GFC’s lack of clear authority to enforce a pet control covenant.
The endangered species which the appellants are seeking to protect are the Key Largo cotton mouse (peromyscus gossypi-nus allapaticola) and the Key Largo wood-rat (neatoma floridana smalli).[1] The GFC issued a permit to the appellees (the Dris-coll entities) on a subdivision-wide basis in Harbor Course South, North Key Largo, Monroe County, to destroy nests and habitat of the above endangered species, incidental to land clearing operations and building construction. The GFC action was pursuant in part to Rule 39-27.002(1), F.A.C. and was conditioned on various requirements, including mitigation by which the permittees would provide certain land as alternative habitat and enhance other sites for the rodents’ benefit. Rule 39-27.002(1), F.A.C. states that:
No person shall pursue, molest, harm, harass, capture or possess any endangered species or parts thereof or their nests or eggs except as authorized by specific permit, permits being issued only when the permitted activity will clearly enhance the survival potential of the species.
To challenge the permit issuance the appellants, the Mangrove Chapter of the Izaak Walton League and the Friends of the *1164 Everglades, both elected a section 120.-57(1), F.S., adjudicatory hearing. The hearing officer allowed the appellants to consolidate these actions, and the developers/per-mittees were allowed to intervene in the hearing. The record from the hearing shows that the GFC had previously taken a lot-by-lot approach in ascertaining whether any subject endangered species or any nests might require GFC protection from development activities. The agency was engaged in an evolving policy to protect the overall habitat of woodrats and cotton mice, in addition to the species themselves and their nests. The hearing officer heard testimony and took evidence regarding (1) the actual physical presence or absence of the subject endangered species in some but not all lots of Harbor Course South, and (2) the efficacy of mitigation requirements imposed. Numerous exhibits were introduced and many experts testified in these proceedings.
The hearing officer issued a recommended order which essentially concluded that the GFC had authority to issue the permit pursuant to incipient agency policy within the framework of its existing rules. The parties then submitted various exceptions, and the GFC reviewed the hearing officer’s Findings of Fact and Conclusions of Law. The GFC in its final order adopted the hearing officer’s conclusions of law with some modifications in limited instances. The GFC agreed with all 95 Findings of Fact with the exception of the deletion of two sentences as to the alleged lack of enforcement mechanism for a required covenant in the subdivision deeds against free-ranging domestic animals.
As a threshold question, appellants assert that this court should review the entire GFC regulatory framework and determine that due process is denied to litigants, since the agency is not necessarily subject to Chapter 120, Florida Statutes. We decline to consider this issue because the agency voluntarily elected to subject itself to a Chapter 120 proceeding, where the parties were provided with notice and an opportunity to be heard. See Florida Public Service Commission v. Central Corporation, 551 So.2d 568 (Fla. 1st DCA 1989).
Appellants next contend that the GFC has no authority to issue the permit and allow the permittees to engage in a taking or destruction of nests and habitat incidental to land clearing and building subject to Rule 39-27.002(1), F.A.C. They argue in the alternative that, even if such authority exists, there is a conflict with the existing rule prohibiting the killing or wounding of an endangered species, Rule 39-27.0011, F.A.C. They further assert there is no competent substantial evidence for the taking of nests or destruction of nests and habitat pursuant to the agency rules or policy. The GFC counterargues on these points (1) that it could properly grant the permit under Rule 39-27.002(1), F.A.C., which states in part that the permitted activity “[must] clearly enhance the survival potential of the [endangered] species”, or (2) that it was authorized to issue the permit under incipient agency policy if its actions are to be so characterized.
We find that appellants’ contentions on this issue are not persuasive. First, the GFC’s actions in issuing the permit on a subdivision-wide basis with mitigation requirements set forth as conditions to the issuance of the permit, are clearly consistent with achieving the objectives of the rule. And to the extent it may involve a novel application of the rule and past practice, the challenged permit is characterized as a permissible act of incipient agency policy. See Gar-Con Development, Inc. v. State, Department of Environmental Regulation, 468 So.2d 413 (Fla. 1st DCA 1985) rev. den., Department of Environmental Regulation v. Gar-Con Development, Inc., 479 So.2d 117 (Fla.1985); Can-son v. State, Department of Administration, 554 So.2d 516 (Fla. 1st DCA 1989).
The record shows that the area which is to be cleared is primarily a fragmented, tropical hardwood, hammock area, in which the presence of the subject endangered species is minimal at best. This court, in considering the testimony of the experts, has a limited review function even when, as here, there are some apparent conflicts as *1165 to the extent of the subject species’ population in the affected area of Harbor Course South. See Graham v. Estuary Properties, Inc. 399 So.2d 1374, 1379 (Fla.1981); cert. den. 454 U.S. 1083, 102 S.Ct. 640, 70 L.Ed.2d 618 (1981). The cleared area (approximately 50 acres) is on private property, which was previously subjected to development in the surrounding area in the 1970’s. The GFC mitigated potential habitat loss by demanding that the permittees revegetate a nearly six-acre plot for the woodrats and cotton mice, and revegetate an easement area. Upon consideration of these facts, we conclude that the GFC has taken a reasonable approach to solving the problem of enhancing the habitat of the subject endangered species in an area of human encroachment.
The GFC’s decision here, to utilize a subdivision-wide rather than lot-by-lot approach to permit issuance, has by its own admission redefined the unit basis for application of its authority. The GFC appears to have made an extensive record in this case to allow its policy to mature and be perfected through adjudication on a case by case basis. This approach is in keeping with long-standing precedent, premised on the policy that agencies should have the burden of exposition when they exercise their discretion in favor of adjudicatory resolution of a dispute in lieu of an immediate rulemaking proceeding. McDonald v. Department of Banking and Finance, 346 So.2d 569 (Fla. 1st DCA 1977); accord Florida Cities Water Company v. Florida Public Service Commission, 384 So.2d 1280 (Fla.1980). The GFC’s final order here is properly limited to specific facts pertaining to the circumstances of the particular species and habitat in this case, and is directed only towards such facts in resolving this dispute.
Appellants’ second contention is that the GFC improperly delegated its authority to Monroe County authorities with respect to the preservation of the species habitat, in that certain local codes apply to the land clearing and building construction activities in the subdivision. We find this argument to be without merit because it is clear that the GFC has retained its authority to issue, modify, or revoke the permit independent of any prior or subsequent action by the county, and that it has not ceded that authority in any apparent fashion. The fact that Monroe County restrictions apply to the development, or that county permits have been issued and referenced in these proceedings, does not show an impermissible delegation of GFC authority in this case. Cf. City of Miramar v. Bain, 429 So.2d 40 (Fla. 4th DCA 1983).
The third issue here is whether the GFC violated applicable law, such as the takings clause in the Florida and United States Constitutions, in adopting the hearing officer’s recommended order that the permittees, or their successors in title or their agents, could go forward with development. Under a prior stipulation with Monroe County, the developers were so authorized. The GFC’s determination to consider the likelihood of future development was not improper here, particularly in light of concerns about the GFC’s authority to exercise jurisdiction over the entire subdivision in an area where woodrat habitation is fragmented. It is also apparent that a rational evaluation of the proper remedy to “clearly enhance the survival potential of the species” in the circumstances of this case requires consideration and respect for all consistent private property interests.
The fourth issue is whether a viable mechanism exists for the permittees or GFC to enforce the control of free-ranging pets, particularly domestic eats, in the subdivision. In the final order, the GFC accepted and adopted the hearing officer’s recommended findings with the exception of the last two sentences of Finding of Fact 68, which (including the underlined portions deleted by the GFC) is as follows:
68. Free ranging domestic pets, especially cats, are a significant threat to the endangered species. One of the conditions imposed by the Proposed Permit would prohibit free ranging pets within the subdivision pursuant to a subdivision covenant to run with the land. The specific wording of such a covenant has not *1166 been provided. The Proposed Permit does not provide for any enforcement mechanism with respect to this covenant. Some enforcement mechanism must be provided in order for this condition to provide any effective protection for the endangered species, (e.s.)
Appellants essentially argue that the GFC improperly deleted the two sentences in question, because there is no competent, substantial evidence that the GFC possesses adequate enforcement power to protect the endangered rodent species from naturally antagonistic predator cats through the device of a subdivision wide covenant in Harbor Course South. The GFC’s argument here in part appears to be that it may directly apply criminal enforcement powers if the permittees fail to establish a suitably protective covenant or if inadequate enforcement thereafter occurs. The permit-tees/intervenors argue that a contextual reading of the deleted language shows the GFC was merely recognizing that inclusion of specific covenant language is unnecessary for GFC review. Although the two sentences deleted may be more properly characterized, respectively, as a mixed statement of fact/law and a recommendation for a stricter enforcement mechanism, we are constrained to make certain observations since remand is required on this issue.
We observe first that, although the state attorney would have authority under section 372.83, Florida Statutes (1989),[2] to prosecute violators of GFC rules or orders, the GFC itself would have no apparent standing to proceed against subdivision property owners after the permittees dispose of their ownership interests in the subdivision. Even though the GFC has conditioned the permit on conformance to its authority, we find no basis on which the GFC may prosecute or otherwise enforce the subject permit with respect to subdivision pet control in its role as adjoining property owner, having contiguous property outside the borders of the subdivision. Cf. Osius v. Barton, 109 Fla. 556, 147 So. 862 (Fla.1933); see, e.g., 7 Fla.Jur.2d, Building, Zoning, and Land Controls § 48-9, at 443-7, 136-7 (pocket part) (1991). Further, the GFC would not appear to have privity of contract or estate with such subdivision owners. Accordingly, it would have no clear authority to require the successors in title of the permittees (or their agents, etc.) to enforce pet control through a covenant for the subdivision.[3] Nor apparently would the GFC, as a third party, have any other basis for standing to sue at future points in time, upon the facts before us in this record. Mindful of the threat which feral predators may pose to the endangered rodents, we reverse and remand under section 120.68(9), Florida Statutes, for further proceedings consistent with this opinion to determine whether an appropriate enforcement mechanism may be set in place.[4]
The final issue here is whether the GFC erroneously used certain federal standards of the United States Fish and Wildlife Ser *1167 vice (USFWS) for the protection of the subject endangered species, which are allegedly less restrictive than the applicable state standards, in issuing the permit. The permit, on its face, clearly shows that the GFC applied its own rule standard (“[whether issuance of the permit] clearly enhances the survival potential of the [endangered] species.”) (e.s.), and incipient agency policy consistent with the rule, to issue the permit. The GFC’s final order is accordingly not erroneous, because there is no evidence in the record that a less restrictive USFWS federal standard actually replaced the applicable state standard in the agency formulation of its approach to this novel situation. Appellants’ contentions in this respect therefore appear to be wholly without merit.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
ALLEN, J., concurs.
KAHN, J., concurs in result only.

. These species were listed by the State of Florida as endangered species under Rule 39-27.003, Florida Administrative Code (F.A.C.).

. Section 372.83, Florida Statutes, states that: "Any person violating any rule, regulation or order of the Game and Fresh Water Fish Commission adopted pursuant to s. 9, Art. IV of the State Constitution and this chapter [“Wildlife"] shall be guilty of a misdemeanor of the second degree, punishable' as provided in s. 775.082 or s. 775.083.”

. We also point out that there may be an arguable question as to any violation of GFC rules for owners of cats or other domestic pets whose pets kill the endangered rodents in that GFC rule 39-27.0011, F.A.C., states “No person shall kill or wound any endangered species." (e.s.) We acknowledge, of course, the possibility that under certain circumstances a person may be made responsible in some manner for the destructive consequences of a pet’s action.

. Appellants do not challenge the GFC’s modification of Conclusion of Law 32(g), accepting and adopting the intervenors’ exceptions with respect to the requirement of a covenant. In light of reversal and remand on Finding of Fact 68, we note that this disposition is without prejudice to reconsideration of Conclusion of Law 32(g), or any other pertinent provision of the final order insofar as such is necessary to resolution of this issue. See Ganson, supra at 520 (citing Anheuser-Busch, Inc. v. Department of Business Regulation, 393 So.2d 1177, 1182 (Fla. 1st DCA 1981)). We also point out that if, for example, the permittees’ permanent dedication of the mitigation area of Tract E, Harbor Course South, could afford an appropriate basis for pet control enforcement against residents in the subdivision, then this issue may be mooted.